JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Merry Reed; Philadelphia Bail Fund.

## DEFENDANTS
Magistrate Judges Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Jane Rice, Robert Stack; President Judge Patrick Dugan; Sheriff Jewell Williams.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*   Michael Berry
Ballard Spahr LLP
1735 Market Street, 51st Floor, Philadelphia, PA, 19103
215-665-8500

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane    ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product     Product Liability | |     28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument |     Liability    ❏ 367 Health Care/ | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 320 Assault, Libel &     Pharmaceutical     Slander     Personal Injury | | ❏ 820 Copyrights ❏ 830 Patent | ❏ 430 Banks and Banking ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'     Product Liability | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) |     Liability    ❏ 368 Asbestos Personal ❏ 340 Marine     Injury Product ❏ 345 Marine Product     Liability | |     New Drug Application ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits |     Liability   **PERSONAL PROPERTY** ❏ 350 Motor Vehicle    ❏ 370 Other Fraud | **LABOR** ❏ 710 Fair Labor Standards | **SOCIAL SECURITY** ❏ 861 HIA (1395ff) | ❏ 480 Consumer Credit ❏ 485 Telephone Consumer |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle    ❏ 371 Truth in Lending     Product Liability |     Act ❏ 720 Labor/Management | ❏ 862 Black Lung (923) ❏ 863 DIWC/DIWW (405(g)) |     Protection Act ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal    ❏ 380 Other Personal     Injury      Property Damage |     Relations ❏ 740 Railway Labor Act | ❏ 864 SSID Title XVI ❏ 865 RSI (405(g)) | ❏ 850 Securities/Commodities/     Exchange |
| ❏ 195 Contract Product Liability ❏ 196 Franchise | ❏ 362 Personal Injury -    ❏ 385 Property Damage     Medical Malpractice     Product Liability | ❏ 751 Family and Medical     Leave Act | | ❏ 890 Other Statutory Actions ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters ❏ 895 Freedom of Information |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights   **Habeas Corpus:** |     Income Security Act | ❏ 870 Taxes (U.S. Plaintiff     or Defendant) |     Act |
| ❏ 220 Foreclosure | ❏ 441 Voting    ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment    ❏ 510 Motions to Vacate | |     26 USC 7609 | ❏ 899 Administrative Procedure |
| ❏ 240 Torts to Land | ❏ 443 Housing/      Sentence | | |     Act/Review or Appeal of |
| ❏ 245 Tort Product Liability |     Accommodations    ❏ 530 General | | |     Agency Decision |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -    ❏ 535 Death Penalty     Employment   **IMMIGRATION** | | | ☒ 950 Constitutionality of     State Statutes |
| | ❏ 446 Amer. w/Disabilities -    ❏ 540 Mandamus & Other     Other    ❏ 550 Civil Rights | ❏ 462 Naturalization Application ❏ 465 Other Immigration | | |
| | ❏ 448 Education    ❏ 555 Prison Condition    ❏ 560 Civil Detainee -      Conditions of      Confinement |     Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
First Amendment challenge to state-court rules prohibiting audio-recording of bail hearings.

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ❏ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
07/17/2019

SIGNATURE OF ATTORNEY OF RECORD
*Michael Berry* ~ p.p. MRM

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 02/19)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Merry Reed: P.O. Box 29476, Philadelphia, PA 19125.  Philadelphia Bail Fund, Inc.: P.O. Box 22316, Philadelphia, PA 19110.

Address of Defendant: All Municipal Court Defendants: 1301 Filbert Street, Philadelphia, PA 19107.  Sheriff Jewell Williams: 100 South Broad Street, 5th Floor, Philadelphia, PA 19107.

Place of Accident, Incident or Transaction: _____ 1301 Filbert Street, Philadelphia, PA 19107. _____

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year     Yes ☐   No ☑
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit     Yes ☐   No ☑
   pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier     Yes ☐   No ☑
   numbered case pending or within one year previously terminated action of this court?

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights     Yes ☐   No ☑
   case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☑ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/17/2019          Michael Berry  p.p. MRM          PA 86351

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.     *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.     *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ____ Michael Berry ____, counsel of record *or pro se plaintiff*, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: 07/17/2019          Michael Berry  p.p. MRM          PA 86351

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

| | | |
|---|---|---|
| Merry Reed; Philadelphia Bail Fund, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Magistrate Judge Francis Bernard, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)


| | | |
|---|---|---|
| July 17, 2019 | Michael Berry | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-665-8500 | | BerryM@ballardspahr.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)         The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)         In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)         The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)         Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)         Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

**MERRY REED; PHILADELPHIA**
**BAIL FUND,**

                *Plaintiffs*,

**v.**

**ARRAIGNMENT COURT MAGISTRATE**
**JUDGES FRANCIS BERNARD, SHEILA**
**BEDFORD, KEVIN DEVLIN, JAMES**
**O'BRIEN, JANE RICE, and ROBERT**
**STACK, in their official capacities;**
**PRESIDENT JUDGE PATRICK DUGAN,**
**in his official capacity; SHERIFF**
**JEWELL WILLIAMS, in his official**
**capacity,**

                *Defendants*.

**COMPLAINT**

Civil Action No. _____

_____

## INTRODUCTION

1.     Every day, in a basement courtroom in downtown Philadelphia, magistrates of Pennsylvania's First Judicial District hold hearings and set bail for dozens of recently arrested individuals.  The stakes of these hearings are extremely high.  A magistrate's decision on bail determines whether an arrestee will spend the ensuing days, weeks, or months awaiting trial at home with family or alone in a jail cell.  That decision can have profound consequences for the arrestee: for many, it dictates whether or not they will be able to keep their jobs, support their families, avoid eviction, or obtain favorable resolutions to their cases.

2.     Given the significance of bail determinations, it is unsurprising that the bail process has become a focal point in local and national debates about our criminal justice system.  Growing

1

public concern about cash-bail systems has resulted in policy changes in many jurisdictions.  In Philadelphia, these efforts have been the subject of intense public discourse and widespread media coverage.

3.      Yet, despite the immense public interest in Philadelphia's bail system, the bail hearings themselves remain largely hidden from public view.  All bail hearings in the First Judicial District occur entirely off the record, and no publicly available transcripts or recordings of the proceedings exist.

4.      In addition, multiple court rules impede the public's ability to make up for the absence of any public record of these proceedings and document what happens during the hearings. Although members of the public may observe the hearings in person, the rules make it nearly impossible for people to effectively memorialize and report what they observe there.  Among other restrictions, the rules expressly prohibit observers from audio recording the proceedings, even with a silent, non-cellular recording device.  Taken together, these restrictions stymie public discourse and debate surrounding Philadelphia's evolving bail process by preventing the press and local advocates from showing the broader public how bail hearings actually work.

5.      This suit challenges those restrictions.  Plaintiffs are a journalist and a group of activists who seek to report and comment on, as well as spur debate over, the workings of Philadelphia's bail system.  Merry Reed is an independent journalist whose work focuses on criminal justice issues. The Philadelphia Bail Fund is a non-profit organization dedicated to ending cash bail in Philadelphia that regularly issues reports and analyses regarding the workings of Philadelphia's bail system.  Both Plaintiffs want to use audio recordings of bail proceedings to allow them to give people a better—and more comprehensive—understanding of these potentially life-altering hearings.  Their use of audio recordings will aid the public's ability to monitor,

understand, and effectively debate the issues related to Philadelphia's bail system.  But the First Judicial District's court rules prevent Plaintiffs from doing so.   Plaintiffs therefore seek a declaratory judgment holding that these restrictions on their speech and reporting activities violate the First Amendment.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over this action under 28 U.S.C. § 1331.

7.      Venue is proper in this District under 28 U.S.C. § 1391.

## PARTIES

8.      Plaintiff **Merry Reed** is a writer, reporter, and the managing editor of *The Declaration*, an independent online news source that covers Philadelphia politics, art, culture, and activism.  Ms. Reed's writing and investigative work focus, in particular, on criminal and civil justice issues in Philadelphia.  She is actively investigating and gathering information about Philadelphia's bail system.

9.      Plaintiff **Philadelphia Bail Fund** is a non-profit organization whose mission is to change Philadelphia's bail system from one based on wealth to a more just system that does not detain people because of their poverty and releases arrested individuals while they await trial in all but rare circumstances, such as when an individual has been shown to be a clear danger.  The Bail Fund pursues its mission in a variety of ways, including by posting bail for people who cannot afford to do so on their own.  In addition, the Bail Fund operates an initiative called Philadelphia Bail Watch, which sends volunteers into bail hearings to observe and report on what they see.  The Bail Fund uses the information gathered by those volunteers to produce public reports aimed at educating Philadelphia's citizens and government officials about the City's bail practices.  The organization also engages with the public on bail-related issues via public messaging, including

on social media.  In addition, the Bail Fund attends meetings with stakeholders in positions of authority over the everyday functioning of the City's cash bail system, where they advocate for change using the information gathered from regularly observing bail hearings.  The Bail Fund is incorporated in Pennsylvania and run by a staff of six permanent volunteers.

10.     Defendants **Francis Bernard**, **Sheila Bedford**, **Kevin Devlin**, **James O'Brien**, **Jane Rice**, and **Robert Stack** are the six Arraignment Court Magistrates who preside over bail hearings in Philadelphia's Criminal Justice Center (CJC).  Each magistrate is appointed by the President Judge of the Philadelphia Municipal Court.  During the time that each magistrate is on the bench, he or she is responsible for prohibiting members of the public from making recordings of bail hearings.  The magistrates have authority to direct Sheriff's deputies, who provide courtroom security, to enforce the prohibition on recording by seizing recording devices and/or removing a person making a recording from the courtroom.  Each magistrate also possesses authority to hold anyone who violates the recording ban in contempt.

11.     Defendant **Patrick Dugan** is the President Judge of the Philadelphia Municipal Court.  President Judge Dugan appoints (with the consent of a majority of the other municipal court judges) the Arraignment Court Magistrates.  Pursuant to Pennsylvania Rule of Criminal Procedure 116, President Judge Dugan is responsible for ensuring that the Arraignment Court Magistrates comply with the Pennsylvania Rules of Criminal Procedure, including the prohibition against audio recording.

12.     Defendant **Jewell Williams** is the Sheriff of Philadelphia County and leads the Philadelphia Sheriff's Office.  Sheriff Williams is responsible for security at the CJC and for enforcing court rules, including the prohibition on audio recording. The Sheriff's Office, at Sheriff Williams's direction and in conjunction with the judicial officers (including Defendants here) at

4

the CJC, has a policy and practice of enforcing the prohibition on audio recording by stopping people from using recording devices in courtrooms in the CJC, including by requiring members of the public (absent certain exceptions) to place cellular phones in magnetically sealed pouches that prevent use within the CJC. When cellular phones are not placed in such a pouch or when a person possesses a different device capable of recording, the Sheriff enforces the ban by seizing the device and/or removing the person from the courtroom if the device is used in a courtroom.

## FACTS

### A.   Public Discourse Surrounding Philadelphia's Bail System

13.     In recent years, public scrutiny of "cash bail" systems has increased dramatically. A growing number of lawmakers, researchers, and citizens have come to believe that the widespread use of monetary bail as the primary means of securing pretrial release has devastating effects on indigent defendants, their families, and their communities. These concerns have recently prompted political debates, court cases, and policy changes in states and cities around the country.

14.     Philadelphia is no exception to this trend. In 2017, for example, the City's current District Attorney, Larry Krasner, campaigned expressly on a promise to minimize the use of cash bail. Since beginning his term in 2018, Mr. Krasner has sought to implement that promise by directing his office not to seek bail for certain low-level offenses. Philadelphia's City Council subsequently joined the debate by passing a resolution calling on Mr. Krasner, the First Judicial District, state lawmakers, and the Pennsylvania Supreme Court to adopt further changes to the existing bail system. And, earlier this year, a group of community organizations and individuals filed a lawsuit in state court challenging the Arraignment Court Magistrates' bail-setting practices.

Most recently, the Pennsylvania Supreme Court issued an order stating that it would conduct an inquiry into Philadelphia's cash bail system.

**B.      The Bail Process in Philadelphia**

15.      Bail is set in Philadelphia in a windowless courtroom in the basement of the Criminal Justice Center.  The six Arraignment Court Magistrates preside over all bail decisions, taking rotating shifts.  A representative from the District Attorney's Office is present at every hearing.  At hearings in which the defendant has no lawyer (which constitute the majority of such hearings in Philadelphia), a representative from the Public Defender's Office or other court-appointed attorney is also present.  The defendant is not physically present at the hearing but is instead connected via video link from one of the City's Divisional Booking Centers, where recently arrested individuals are processed.

16.      At the hearings, lawyers for the District Attorney's Office and for the defendant both have an opportunity to present argument.  For example, the representative from the District Attorney's Office will recommend conditions of release—typically, secured cash bail that must be paid before a person will be released—and offer argument about the severity of the charges or the defendant's criminal history.  The defendant's representative will often present information about the defendant's ability to pay the amount of cash bail requested by the prosecution and about the defendant's ties to the community or other relevant background information.  The presiding magistrate questions the representative as he or she deems necessary.  These hearings often last less than four minutes.

17.      In addition to hearing argument, the presiding magistrate receives a report from the First Judicial District's Pretrial Services Division.  This report contains information about the

defendant's background and recommends conditions of release—derived from a set of "bail guidelines"—for each defendant.

18.     Immediately after hearing evidence and argument and reviewing the Pretrial Services Division's report, the presiding magistrate announces his or her decision on conditions of release.  The conditions can include release on the promise to appear at the next hearing; release on the promise to pay some monetary amount if the person fails to appear; release on the deposit of some monetary amount that will be forfeited if the person fails to appear ("secured cash bail"); or release on non-monetary conditions, such as being required to report periodically to a pretrial services officer.  The conditions that the Arraignment Court Magistrates set frequently vary from those requested by the parties' representatives.

19.     Following the magistrate's decision, the defendant's representative has the opportunity to immediately appeal, via telephone, to a Municipal Court judge.  The appeal takes place with the Municipal Court judge on speakerphone.

20.     The decision on bail carries major ramifications for defendants and their families.  For the defendants—the vast majority of whom are indigent—the imposition of secured cash bail as a condition of release typically means facing pretrial detention, which, in turn, can lead to job loss, eviction, separation from children, and other adverse consequences.

C.      **Public Access to Bail Proceedings**

21.     Bail hearings in the CJC are generally open to the public.  However, almost no information is made available to the public in advance of the hearings.  No list of defendants scheduled for bail hearings is made available to the public.  The Pretrial Services Division's report is not made available to the public.

22.     At the bail hearings, no court reporter is present.  No transcript is made.  And neither the representative for the District Attorney's Office nor the defendant's representative provides any written argument.

23.     No one within the First Judicial District—including President Judge Dugan, the Arraignment Court Magistrates, and Sheriff Williams—makes any audio, video, or written recordings of the bail proceedings available to the public.

**D.     Court Rules Governing Recording Bail Hearings**

24.     Three separate court rules generally prohibit the public from making audio recordings of bail proceedings: Pennsylvania Rule of Criminal Procedure 112(C), Pennsylvania Rule of Judicial Administration 1910, and Local Arraignment Court Magistrate Rule 7.09.

25.     ***Pennsylvania Rule of Criminal Procedure 112(C)***.  Rule 112 provides, in relevant part:

> (C)  Except as provided in paragraph (D), the stenographic, mechanical, electronic recording, or the recording using any advanced communication technology, of any judicial proceedings by anyone other than the official court stenographer in a court case, for any purpose, is prohibited.

> (D)  In a judicial proceeding before an issuing authority, the issuing authority, the attorney for the Commonwealth, the affiant, or the defendant may cause a recording to be made of the judicial proceeding as an aid to the preparation of the written record for subsequent use in a case, but such recordings shall not be publicly played or disseminated in any manner unless in a court during a trial or hearing.

Thus, for members of the public, such as Plaintiffs, Rule 112(C) operates as complete ban on making audio recordings of criminal hearings, including bail hearings.

26.     ***Pennsylvania Rule of Judicial Administration 1910***.  Rule 1910 provides, in relevant part, that "judges should prohibit broadcasting, televising, recording or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions," subject to limited exceptions that do not apply to Plaintiffs.  Rule 1910

operates to bar members of the public—such as Plaintiffs—from making audio recordings of bail proceedings.

27.     ***Local Arraignment Court Magistrate Rule 7.09.***   Local Rule 7.09 provides that "[a]n Arraignment Court Magistrate shall prohibit broadcasting, televising, recording, or taking photographs in the Courtroom or the areas immediately adjacent thereto during sessions or recesses between sessions."   The Rule permits Arraignment Court Magistrates to use "electronic or photographic means . . . for the perpetuation of a record," but the Arraignment Court Magistrates do not allow audio recording by members of the public to perpetuate the record.   Thus, Local Rule 7.09 operates to bar members of the public—such as Plaintiffs—from making audio recordings of bail proceedings.

28.     The President Judge, Arraignment Court Magistrates, and Sheriff enforce these rules in a number of ways.

29.     When a person enters the CJC, the deputy sheriffs, pursuant to Sheriff Williams's policy, require that person to place his or her cell phone in a magnetically sealed pouch that makes the phone unusable within the courthouse.

30.     Deputy sheriffs, pursuant to Sheriff Williams's policy, also enforce the prohibition by periodically checking the basement courtroom to ensure, among other things, that no one is using a recording device.

31.     President Judge Dugan and the Arraignment Court Magistrates have posted in the courtroom where bail hearings take place multiple signs that make clear that recording is prohibited.

32.     Finally, the Arraignment Court Magistrates instruct anyone using a device capable of recording—even if the device, such as a cell phone, is not actually being used to record—to

stop using the device in the courtroom.  Those instructions are backed by the Magistrates' contempt power and ability to direct deputy sheriffs.

33.     There is no valid justification for the ban on audio recording.

34.     The ban does not preserve confidentiality, because the proceedings are open to the public to observe in-person.

35.     The ban does not minimize disruption to ongoing proceedings because audio recordings can be made silently and inconspicuously.

36.     The ban does not protect against witness intimidation because, unlike other proceedings at the CJC, there are no witnesses at bail hearings.

37.     Several jurisdictions have made their own audio recordings of bail hearings available to the public for years.

> **E.     Plaintiffs' Requests for Permission to Audio Record Bail Hearings**

38.     On June 14, 2019, the Philadelphia Bail Fund emailed President Judge Dugan to request permission to audio record the bail proceedings held before the Arraignment Court Magistrates.  President Judge Dugan responded on June 17, 2019, denying the Bail Fund's request, stating, without elaboration, "State rules prohibit your request."

39.     On June 18, 2019, Merry Reed sent letters to the six Arraignment Court Magistrate Judges to request permission to audio record the bail proceedings held before them.  The letters requested a response by July 3, 2019.  On that date, President Judge Dugan responded to Ms. Reed's request on behalf of Magistrate Judge O'Brien, stating that he was "unable to allow [her] use of the recording device."  No other magistrate responded to Ms. Reed's requests, either independently or through President Judge Dugan.

**F.      Injuries to Plaintiffs**

40.      Because the First Judicial District does not create a public record of what actually transpires in bail hearings—there is no court reporter and no recording of the hearings—the challenged rules severely hinder Plaintiffs' ability to document, report, and comment on Philadelphia's bail process.

41.      The audio recording ban, in particular, impedes Plaintiffs' efforts to engage in and contribute to meaningful civic discourse about the City's evolving pretrial detention system.  The ban also deprives the broader public of a vital source of information about that system: after all, most people cannot observe bail hearings on a regular basis and, instead, must rely on the work of journalists, activists, and community leaders—like Plaintiffs—to learn what happens during those hearings.  By prohibiting Plaintiffs from audio recording those hearings, the challenged rules inhibit Plaintiffs' ability to inform the public about their criminal justice system.

42.      Plaintiff Merry Reed is in the process of investigating bail practices in Philadelphia for an article she plans to publish in *The Declaration*.

43.      The ability to make audio recordings of bail proceedings would allow Ms. Reed to create a more complete investigatory record to draw upon when writing her article.  In particular, it would give her a comprehensive record of every hearing she observed, which she would be able to review as she gathered more information and decided which aspects of those hearings to highlight in her reporting.  The recordings would also allow Ms. Reed to make more effective use of direct quotations, rather than relying on paraphrasing.  Moreover, because the *Declaration* is an online outlet, Ms. Reed would also embed audio clips in her story to highlight the human aspects of the hearings—such as tone of voice and pace of arguments—that cannot be captured as

11

powerfully in writing.  In short, the ability to audio record bail hearings will not only enhance the effectiveness of her reporting, but also fundamentally change its substance.

44.     If not for the restrictions on audio recording, Ms. Reed would begin recording bail hearings right away.  She would use a silent, handheld recording device that would cause no disruption to courtroom hearings.  The recording device would not have any cellular or wireless capabilities and she would allow courthouse security to inspect the device before she began using it.

45.     Plaintiff Philadelphia Bail Fund regularly produces reports and communicates with the public about bail hearings in Philadelphia.  The organization plays an important role in monitoring and informing the public about the practices of the District Attorney's Office, Public Defender's Office, and Arraignment Court Magistrates during bail proceedings.

46.     The Philadelphia Bail Fund gathers information through a network of temporary volunteers who participate in the organization's Philadelphia Bail Watch initiative.  These volunteers are given a form to document specific facts about each bail hearing that the Bail Fund uses to track developments in the bail process over time.  Permanent volunteers who run the Bail Fund collect and analyze this information for production in online and written reports, communications with governmental actors, and other public messaging, such as social media posts.

47.     Although the Philadelphia Bail Fund's communications summarizing the data collected through the Bail Watch initiative offer some information about how bail operates in Philadelphia, these summaries paint an incomplete picture and fail to capture the critical human elements of the bail hearings.

48.     The Philadelphia Bail Fund seeks to make audio recordings to capture exactly what transpires in bail hearings. The Philadelphia Bail Fund's volunteers typically observe bail hearings

at least once a month and often multiple times a week.  If not for the unconstitutional prohibitions on audio recording those proceedings, the volunteers would make audio recordings of every hearing they attended.

49.     The Bail Fund would like to share those recordings with the broader public so that people can better understand how bail hearings work and better monitor what happens during those proceedings.  In addition to documenting precisely what happens in bail hearings, audio recordings will capture important elements of the bail process that written summaries cannot.  These elements include the tone and tenor in which representatives of the District Attorney's Office and defense counsel present their arguments, the manner in which Arraignment Court Magistrates respond to those arguments, and numerous other auditory aspects of the proceedings.

50.     The current restrictions on audio recording impede the Bail Fund's ability to contribute to the ongoing civic discourse surrounding Philadelphia's bail system.  If not for those restrictions, the Bail Fund would create and use audio recordings of bail hearings to educate the public about what happens during those hearings.  Among other things, the Bail Fund would use those recordings to embed audio excerpts of hearings into online versions of its reports, including a report that it plans to publish later this year.  The Bail Fund would also make recordings of bail hearings available to the public through social media platforms, with commentary explaining how particular hearings reflect positive or negative attributes of the current system.  And, of course, the Bail Fund would use the recordings to provide more detailed information—including more comprehensive data analyses and more in-depth summaries of proceedings—throughout all of its public messaging and materials.

51.     Currently, the Bail Fund must rely on its volunteers, who can take only handwritten notes during the compressed bail hearings.  Because most of these volunteers are not lawyers and

have limited familiarity with legal terminology and procedures, it can be difficult for them to take comprehensive written notes on the proceedings.  These difficulties are compounded by the dearth of information made available to the public in advance of each hearing.  Volunteers must seek to document a vast amount of information—much of it technical—in real time, while simultaneously trying to process the substance of the arguments being exchanged and the decisions being rendered. These constraints hinder the Bail Fund's efforts to document what transpires during bail proceedings and to share that information with the public.

52.    If not for the court rules prohibiting audio recording, the Philadelphia Bail Fund would provide its volunteers with silent, handheld recording devices that would not cause any disruption to the courtroom proceedings.  The recording devices would have no cellular or wireless capabilities, and the organization would allow courthouse security to inspect the device before volunteers began using it.

**CAUSE OF ACTION**

**Pennsylvania Rule of Criminal Procedure 112, Pennsylvania Rule of Judicial Administration 1910, and Local Arraignment Court Magistrate Rule 7.09 Violate Plaintiffs' First Amendment Rights (All Plaintiffs against all Defendants)**

53.    The foregoing allegations are incorporated herein.

54.    Pennsylvania Rule of Criminal Procedure 112, Pennsylvania Rule of Judicial Administration 1910, and Local Arraignment Court Magistrate Rule 7.09 prohibit members of the public, including Plaintiffs, from making audio recordings of criminal court proceedings, including bail hearings.  As noted above, Rule of Criminal Procedure 112 does not contain any exceptions for members of the general public and Plaintiffs do not qualify for any of the narrow exceptions to Rule of Judicial Administration 1910 or Local Arraignment Court Magistrate Rule 7.09.

55.     If not for these unconstitutional rules, Plaintiffs would make audio recordings of bail hearings for use in future reports and communications with the public and governmental actors.

56.     Defendants enforce the challenged rules and will enforce them against Plaintiffs if Plaintiffs attempt to make audio recordings.  This violates Plaintiffs' First Amendment rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.  Declare Pennsylvania Rule of Criminal Procedure 112 unconstitutional insofar as it is applied to prohibit Plaintiffs from recording bail hearings in the CJC;

B.  Declare Pennsylvania Rule of Judicial Administration 1910 unconstitutional insofar as it is applied to prohibit Plaintiffs from recording bail hearings in the CJC;

C.  Declare Local Arraignment Court Magistrate Rule 7.09 unconstitutional insofar as it is applied to prohibit Plaintiffs from recording bail hearings in the CJC;

D.  Award Plaintiffs attorneys' fees and costs incurred for litigating against Defendant Williams; and

E.  Grant such further relief as may be just, lawful, and equitable.

Respectfully submitted,

/s/   Michael Berry   p.p. MRM

MICHAEL BERRY
PAUL J. SAFIER
MICHAEL McDONALD***
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel.:  215-665-8500
Fax:  215-864-8999
berrym@ballardspahr.com
safierp@ballardspahr.com
mcdonaldm@ballardspahr.com

ROBERT D. FRIEDMAN*
NICOLAS Y. RILEY**
INSTITUTE FOR CONSTITUTIONAL ADVOCACY &
    PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW
Washington, DC 20001
Tel.:  202-662-4048
Fax:  202-662-9248
rdf34@georgetown.edu
nr537@georgetown.edu

15

\*   Admitted to practice in the District of
   Columbia (No. 1046738); *pro hac vice*
   application forthcoming.

\*\*  Admitted to practice in New York (NY
   Registration No. 5039607); *pro hac vice*
   application forthcoming.

\*\*\* Admitted to practice in New York (NY
   Registration No. 5455738); admission to
   practice in Pennsylvania pending; application
   for admission to the Eastern District of
   Pennsylvania forthcoming.

*Counsel for Plaintiffs*

Dated:  July 17, 2019