UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**MERRY REED; PHILADELPHIA BAIL FUND,**

    *Plaintiffs*,

v.

**ARRAIGNMENT COURT MAGISTRATE JUDGES FRANCIS BERNARD, SHEILA BEDFORD, KEVIN DEVLIN, JAMES O'BRIEN, JANE RICE, and ROBERT STACK, in their official capacities; PRESIDENT JUDGE PATRICK DUGAN, in his official capacity; SHERIFF JEWELL WILLIAMS, in his official capacity,**

    *Defendants*.

Civil Action No. 2:19-3110

### DECLARATION OF MALIK NEAL

MALIK NEAL, pursuant to 28 U.S.C. § 1746, states as follows:

1. I am a co-founder and Director of the Philadelphia Bail Fund.

2. The Philadelphia Bail Fund is a non-profit organization whose mission is to change Philadelphia's bail system from one based on wealth to a more just system that does not detain people because of their poverty and releases arrested individuals while they await trial in all but rare circumstances, such as when an individual has been shown to be a clear danger. The organization pursues that mission in a variety of ways, including by posting bail for people who cannot afford to do so on their own.

3. As part of its work, the Bail Fund operates an initiative called Philadelphia Bail Watch, which sends volunteers to observe bail hearings and, to the extent possible, collect

1

information about those hearings. We train the volunteers to look for information on the charge and bail amount/type for each arrestee as well as relevant statements made during each hearing by all participants in the hearing, including the magistrate and representatives of the District Attorney's office and the Defender Association of Philadelphia. Although we provide guidance about what constitutes a relevant statement, that is ultimately a discretionary determination and we have no guarantee that volunteers will note all statements pertinent to our work and mission. We also ask volunteers to share and document their personal reflections on the bail process after having observed hearings. Volunteers typically observe bail hearings in the basement of the Criminal Justice Center (CJC) at least once a month and often multiple times a week. I have personally visited the CJC to observe over 300 bail hearings on over fifty occasions over the past two years.

4. The Bail Fund collects and analyzes the information gathered by its Bail Watch volunteers. We use this information to produce public reports aimed at, among other things, educating Philadelphia's citizens and government officials about the City's bail practices. *See, e.g.*, *Philadelphia Bail Watch Report: Findings and Recommendations Based on 611 Hearings* (Oct. 15, 2018), https://perma.cc/AT79-VA2P; *Observations of 125 Recent Bail Requests* (May 8, 2019), https://perma.cc/Y8QD-F7AA. These reports often receive coverage in the news media. For instance, our first report was introduced in an op-ed in the *Philadelphia Inquirer*. Cal Barnett-Mayotte, *Philadelphia Bail Watch Volunteers Document Daily Injustices of Cash Bail*, PHILA. INQUIRER (Oct. 16, 2018), https://perma.cc/MLB9-BB86. Our second report on bail requested by the District Attorney was featured on the news website *The Appeal*. Bryce Covert, *Progressive Philly D.A. Larry Krasner's Bail Reform Plans Seem Stalled, Advocates Say*, THE APPEAL (June 25, 2019), https://perma.cc/D2FC-8G3K. The report's findings, according to the article, "caused a great deal of internal discussion" in the District Attorney's office. In addition,

last month, the news website *Billy Penn* covered the release of our most recent report, which documented that 91% of arrestees for whom our organization posted bail ultimately showed up for their court appearances. *See* Max Marin, *A Philly Group Posted Bail for 130 People. Here's What Happened Next,* BILLY PENN (Nov. 13, 2019), https://perma.cc/9YDE-JR5W.

5.  The Bail Fund also shares information and educates the public about the City's bail system through its website and social-media accounts. For instance, the Bail Fund website includes a section featuring Bail Watch volunteers' reflections on their experiences observing bail hearings. *See* https://perma.cc/VJC8-7CKX.

6.  Members of the Bail Fund have met privately with government officials and other stakeholders (including community organizations) to discuss bail policy. During those meetings—nearly all of which I have personally attended—some officials have disputed the Bail Fund's characterization of the amounts and stated rationales for prosecutors' requests for cash bail as well as questioned the frequency with which the Defender Association's representatives advocated for their clients during preliminary arraignments.

7.  The Bail Fund seeks to make audio recordings of bail hearings to capture exactly what transpires during the hearings. In light of existing court rules, our volunteers cannot make audio recordings of the proceedings and are unable to use any stenographic aids. Thus, to make a record of what actually happens in the proceedings, they must take notes by hand. Although many of the organization's current volunteers are able note-takers, the volume of information and speed of arguments exchanged during each hearing, and the quick, back-to-back nature of the hearings, makes it impossible to document by hand everything that occurs (let alone to do so verbatim). In addition, the fact that most of our volunteers are not lawyers and have limited familiarity with legal terms, the jargon and acronyms used in many of the hearings, and the

technical procedures surrounding criminal cases compound the difficulty of attempting to record everything that occurs through handwritten notes alone.

8. If not for the prohibition on audio-recording bail hearings, we would instruct Bail Fund volunteers to audio-record the hearings and work with us to share the recordings with the broader public so that people can better understand how bail hearings work. Among other things, the Bail Fund would embed excerpts of the audio recordings into online versions of its reports and share them via social media. The Bail Fund would use the recordings to provide the public, government officials, and other stakeholders with comprehensive and verifiable information about the proceedings, including the parties' arguments and release recommendations, the pretrial services agency's report findings on employment status and ability to afford counsel (to the extent that information is disclosed at the hearing), and the magistrates' questions and statements during the hearings. None of this essential information about an individual case or the Philadelphia bail process generally is otherwise available to the public in a comprehensive and verifiable way.

9. If not for the prohibition on audio-recording during bail hearings, the Bail Fund would provide its volunteers with silent, handheld recording devices to use during the proceedings. The recording devices would have no cellular or wireless capabilities, and the organization would allow courthouse security to inspect the devices before volunteers began using them, to confirm that the devices function silently and without disrupting the proceedings.

10. I am over eighteen years old. I affirm under the penalties of perjury and upon personal knowledge that the foregoing is true to the best of my knowledge.

Dated: December 16, 2019      Signed: _____
                                      Malik Neal
                                      Director, Philadelphia Bail Fund