## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERRY REED, et al. | : | |
| *Plaintiffs,* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 19-3110 |
| ARRAIGNMENT COURT MAGISTRATE | : | |
| JUDGE FRANCIS BERNARD, et al., | : | |
| | : | Hon. Harvey Bartle, III |
| *Defendants* | : | |

## ORDER

**AND NOW,** this _____ day of _____ 2020, upon consideration of Defendant Arraignment Court Magistrate Judges Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Jane Rice, and Robert Stack and President Judge Patrick Dugan's Motion for Summary Judgment Under Fed.R.Civ.P. 56, and Plaintiff's response, it is hereby **ORDERED** that the Motion is **GRANTED.**

**JUDGMENT IS ENTERED IN FAVOR** of Defendants Arraignment Court Magistrate Judges Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Jane Rice, and Robert Stack and President Judge Patrick Dugan and against Plaintiffs on all counts.

BY THE COURT:

_____
J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERRY REED, et al. | : | |
| *Plaintiffs,* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 19-3110 |
| ARRAIGNMENT COURT MAGISTRATE | : | |
| JUDGE FRANCIS BERNARD, et al., | : | |
| | : | Hon. Harvey Bartle, III |
| *Defendants* | : | |

**Defendants Arraignment Court Magistrate Judges Francis Bernard,
Sheila Bedford, Kevin Devlin, James O'Brien, Jane Rice, and Robert Stack
<u>and President Judge Patrick Dugan's Motion for Summary Judgment</u>**

Defendants Arraignment Court Magistrate Judges Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Jane Rice, and Robert Stack and President Judge Patrick Dugan move for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds set forth in their accompanying Brief.

**WHEREFORE**, Judicial Defendants respectfully request that this Honorable Court grant judgment in their favor and against Plaintiff on all claims.

Respectfully Submitted,

<u>s/Michael Daley</u>
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
MEGAN L. DAVIS, ESQUIRE
Attorney I.D. No. PA 321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6300, Fax: (215) 560-5486

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MERRY REED, et al. | : | |
| *Plaintiffs,* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 19-3110 |
| ARRAIGNMENT COURT MAGISTRATE | : | |
| JUDGE FRANCIS BERNARD, et al., | : | |
| | : | Hon. Harvey Bartle, III |
| *Defendants* | : | |

**Brief in Support of Defendants Arraignment Court
Magistrate Judges Francis Bernard, Sheila Bedford, Kevin Devlin, James
O'Brien, Jane Rice, and Robert Stack and President Judge Patrick Dugan
<u>Motion for Summary Judgment</u>**

## I.    Statement of the Case

Plaintiff Philadelphia Bail Fund seeks to have this Court extend the First

Amendment right of access to attend court proceedings into a right to make its own

electronic audio recordings of court proceedings. Yet no court holds that there is

such a right. And in fact, courts uniformly hold the opposite.

Plaintiff attempts to avoid these settled cases and long-standing principles by

instead trying to paint a picture that preliminary arraignments in Philadelphia are

"largely hidden from public view" with an "absence of any public record," and,

therefore, they must be able to make audio recordings. But the reality is different.

Instead, Plaintiff and the public can:

- attend and observe every preliminary arraignment in

  Philadelphia's Municipal Court;

- take notes and report on every arraignment;

- obtain bail information from the bail bond and other documents that are filed immediately after the arraignment;

- obtain the criminal complaint immediately after the arraignment;

- access the online dockets – which include bail information – for every case after the arraignment; and

- obtain bulk data from the case management system regarding roughly four dozen fields pertinent to bail for every arraignment for any period.

Plaintiff's First Amendment right of access to attend preliminary arraignments and obtain information about the arraignments has not been violated: the state court rules preventing Plaintiff from making audio recordings are constitutional as applied to Plaintiff.

**Preliminary arraignments and bail.**

In Philadelphia, there are six Arraignment Court Magistrates ("magistrates") who preside over preliminary arraignments for individuals arrested in the city for state crimes. (Stipulation ¶ 6.)(Doc. 31.) A magistrate is available twenty-four hours a day, seven days a week to conduct arraignments, which are held in Philadelphia's Stout Criminal Justice Center ("CJC"). (Stipulation ¶¶ 3, 7.) Preliminary arraignments are open to the public to attend, observe, and take notes. (Stipulation ¶ 27.)

One function of a preliminary arraignment is to determine if an arrestee is bailable and, if so, what bail to set. Pa.R.Crim.P. 1003(D)(3)(d)(v).[1] Prior to the arraignment, Pretrial Services (a unit of the First Judicial District of Pennsylvania) interviews the arrestee at one of seven police Divisional Booking Centers where the arrestee is located to gather information relevant to the bail decision. (Stipulation ¶ 10); Pa.R.Crim.P. 530(A). That information includes the factors that the magistrate uses in making a bail decision, including the defendant's criminal history, the charges, ties to the community, mental condition, drug issues, a history of flight or escape, and related matters that bear on whether a defendant will appear for court. *See* Pa.R.Crim.P. 523(A).

Pretrial Services provides a report to the magistrate, the arrestee and their counsel, and the prosecution prior to arraignment. (Stipulation ¶ 12.) The report, which contains sensitive information about the arrestee, is not publically available. Pa.R.Crim.P. 530(C). In setting bail, the magistrate considers the release criteria in Rule 523 and determines the type or combination of types of release on bail that is reasonably necessary, in the magistrate's discretion, "to ensure that the defendant will appear at all subsequent proceedings and comply with the conditions of the bail bond." Pa.R.Crim.P. 524.

---

[1] This Brief will use "arraignment" and "bail hearing" interchangeably. A preliminary arraignment is distinguishable from a formal arraignment, the latter occurs after a preliminary hearing and prior to trial. *See* Pa.R.Crim.P. 57, 1004. Formal arraignments are not at issue here.

Once the arrestee is ready for arraignment, they appear via audio-visual link on a monitor in the CJC arraignment court. (Stipulation ¶¶ 14-15, 29.) The presiding magistrate is located in the preliminary-arraignment courtroom at the CJC, along with the Commonwealth's attorney and a representative from the Defenders' Association, which represents arrestees who do not have private counsel. (Stipulation ¶ 14.) All participants, along with court attendees, are able to see and hear the arrestee and each other. (Stipulation ¶¶ 14-15, 29.)

During the arraignment, the Commonwealth, the arrestee's representative, and the arrestee have an opportunity to address the court on what bail conditions they believe are appropriate, as well as respond to any questions the bail magistrate may have. (Stipulation ¶ 16.) As noted above, issues that may be discussed during the arraignment include the arrestee's criminal history, the charges, ties to the community, employment status, child care support, mental condition, drug issues, a history of flight or escape, and related matters that bear on whether an arrestee will appear for court. (Stipulation ¶ 17); Pa.R.Crim.P. 523.

When the arraignment is over, the magistrate decides whether the arrestee is bailable and, if so, sets bail. (Stipulation ¶ 19). The magistrate enters their bail decision, including the monetary amount and any conditions (if either are applicable), into the Preliminary Arraignment Reporting System ("PARS") electronic database. (Stipulation ¶ 20, Exhibit A.) That information is then transferred into the Common Pleas Criminal Court Case Management System ("CPCMS"). (Stipulation ¶ 20.)

There are available bail appeals, which are de novo. (Stipulation ¶¶ 22-24.) *See* Pa.R.Crim.P. 1011(A)(providing that a Municipal Court judge may modify bail at any time).

Consistent with Pennsylvania rules, there are no publically available transcripts of the arraignments. (Stipulation ¶ 26.) The state Rules of Criminal Procedure do not require a court to record open court proceedings until after a defendant has been held for court (or after the preliminary arraignment in Municipal Court). Pa.R.Crim.P. 115(a); Pa.R.Crim.P. 1012.

Municipal Court makes audio recordings of preliminary arraignments solely for internal, quality control review purposes. (Stipulation ¶ 26.) The court uses these recordings to address technical issues, such as the quality of the microphones.[2] They also allow general performance monitoring of the magistrates.

The recordings are not used for any judicial purpose related to a particular arraignment: they are neither filed of record nor used in making a judicial determination or decision related to a particular case. Further, they are not done through the Court's Digital Recording Program, which is used to create official transcripts of other proceedings.

---

[2] Pursuant to the Court's instruction, a supplemental stipulation regarding the audio recordings will be filed with the Court.

**Arraignment and bail information available to the public after the arraignment.**

Following the preliminary arraignment, court documents related to the preliminary arraignment are filed in the public court record for that case, including the bail bond, bail appeal report (if applicable), the criminal complaint, and the preliminary hearing subpoena for the arrestee. (Stipulation ¶ 33, Exhibits B-E.) The bail bond, bail appeal report, and hearing subpoena all contain the bail set in the case and any other bail conditions. (Stipulation, Exhibits B-D). These documents are available to the public to review at the CJC for free and to obtain copies for a fee (copies are also available by mail upon request). (Stipulation ¶ 34.)

In addition, docket sheets for every case, which includes arraignment information, are available for free on the internet. (Stipulation ¶¶ 35-37, Exhibit F.) The docket sheet also contains bail information, including when it was set, by what magistrate, the type (cash, unsecured, etc.), the amount, and bail posting status and date, along with upcoming court dates. (Stipulation, Exhibit F.)

Both the Administrative Office of Pennsylvania Courts and the First Judicial District are able to produce bulk data requests for every single arraignment in Municipal Court for a selected period for a fee. (Stipulation ¶¶ 39-44.) A requestor does not need to know anything about a particular case to obtain information about it: they may simply ask for every arraignment for a particular date or period. (Stipulation ¶ 41.) The bulk data provided for each case includes roughly four dozen fields for each case, including information related to bail (including type, amount, whether it was posted, the security type, and so on); the defendant (including race,

gender, age, residence zip code); the criminal charges; the judge or magistrate; and more. (Stipulation, Exhibit J.)

The Philadelphia District Attorney's Office compiles statistical information on bail amount by offense category since 2014, in both raw and proportional values, that is available on its website and update every day. (Stipulation ¶ 45.)

**Pennsylvania's rules on recording court proceedings.**

Pennsylvania's Rules of Criminal Procedure prohibit audio or video recordings of any judicial proceeding by anyone other than an official court stenographer. Pa.R.Crim.P. 112(C). Pennsylvania's Rules of Judicial Administration provide that judges should prohibit recording and photography (among other things) in a courtroom and areas immediately surrounding a courtroom. Pa.R.J.A. 1910.[3] Consistent with these rules, Municipal Court has promulgated a local rule stating that arraignment court magistrates shall prohibit recordings. *See* Phila.M.C.R.Crim.P.A.C.M. 7.09.[4]

In addition, it is a criminal offense for anyone to record a proceeding within a judicial facility or areas surrounding a judicial facility without court approval, the

---

[3] Amendments to Rule 1910 go into effect on January 1, 2020. The amended rule is attached as <u>Exhibit A</u>.

[4] Federal rules also prohibit recordings. *See* Fed.R.Crim.P. 53 ("Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom.") This Court's Local Rules also prevent electronic recording of court proceedings. *See* E.D. Pa. Local Civil R. 83.3. The Court has a standing order addressing the same, which is attached as <u>Exhibit B</u>.

presiding judicial officer's approval, or as provided by court rule. 18 Pa.C.S.A. § 5103.1.[5]

**Plaintiff's ability to report on arraignments and bail.**

Plaintiff is able to attend bail hearings: it sends volunteers into bail hearings to observe and gather information, which it uses to produce public reports and advocate. (Stipulation ¶¶ 58-61.)[6] It uses social media posts and meets with officials, using the information it collects through its access to arraignment court. (Stipulation ¶¶ 2, 61.) Further, former Plaintiff Merry Reed has attended various bail hearings at the Criminal Justice Center to compile information for the publication, *The Declaration*. (Complaint ¶¶ 42-43.)[7]

**Claims and requested relief.**

Plaintiff claims that Pa.R.Crim.P. 112(C), Pa.R.J.A. 1910, and Municipal Court Arraignment Court Magistrate Local Rule 7.09 are unconstitutional as applied to Plaintiff because they prohibit it from audio recording preliminary arraignments in the Municipal Court, in violation of the First Amendment. (Complaint, Prayer for Relief.) Thus, Plaintiff wants a declaration that the cited

---

[5] The Stipulation misidentified the statute section "5301.1." Plaintiff is not challenging this statute.

[6] For example, the Bail Fund participated in producing a 41 page report on arraignments in October 2018 and issued a press release on arraignments, among other reports. (Stipulation ¶¶ 59-60.)

[7] Plaintiff Reed withdrew from this case by a Stipulation of Dismissal filed on December 19, 2019. (Doc. 37.)

rules are unconstitutional as applied to it. (Complaint, Prayer for Relief.) All Defendants are sued in their respective official capacities only.[8]

**Procedural history.**

Plaintiffs started this case by filing a Complaint on July 17, 2019. Following oral argument on Defendants' respective Motions to Dismiss in early November, the parties agreed to have the Court dismiss the Motions without prejudice, and the parties would file cross-motions for summary judgment. (Docs. 24-25, 30.) The Stipulation of undisputed facts was filed on December 11, 2019. (Doc. 31.)

## II.     Statement of Question

1.     Should the Court grant summary judgment for the Judicial Defendants because Plaintiff is able to attend preliminary arraignments and report on what it observes, and there is no First Amendment right to make audio recordings of court proceedings?

Answer: Yes.

2.     Should the Court grant summary judgment for the Judicial Defendants because the right to attend court proceedings is limited to a right of access, not expression, and even if there could be an expression claim, the state court rules are a reasonable policy designed to mitigate potential prejudice to defendants and to the court system?

Answer: Yes.

---

[8] An official capacity suit against a public official is really against the government entity the person is a part of. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). In this case, the claims against the Judicial Defendants are against Municipal Court.

## III.   Argument

### A.   There is no First Amendment right to make audio recordings of court proceedings: only the right to attend and observe.

There is no First Amendment right to make audio recordings of court proceedings. This has been settled law for decades. The Supreme Court has addressed the recording of criminal proceedings. And it has never held that the press or public have a constitutional right to record criminal proceedings. Indeed, its holdings point the opposite way.

Instead of a constitutional issue, courts have recognized that this is a policy issue that is a choice for each judicial system. The Pennsylvania Supreme Court and Municipal Court have made a policy decision to not allow the public to make audio recordings of court proceedings based on its affirmative constitutional duty to ensure that defendants receive a fair trial by mitigating pretrial publicity, as well as preserving courtroom decorum.

Pursuant to this Court's direction, Judicial Defendants will not reiterate the case law holding that the First Amendment guarantees only a right to attend criminal proceedings, not the right to record that Plaintiff seeks.[9]

### The Rules at issue do not limit Plaintiff's right of access to preliminary arraignments.

In determining whether limits on electronic devices in the courtroom violate the right to access, the Third Circuit's holding in *Whiteland Woods* is instructive.

---

[9] Judicial Defendants incorporate their legal analysis from their Motion to Dismiss Brief. (Doc. 12.)

The court held that the "critical question regarding a content-neutral restriction on the time, place, or manner of access to a government proceeding is whether the restriction meaningfully interferes with the public's ability to inform itself of the proceeding: that is, whether it limits the underlying right of access rather than regulating the manner in which that access occurs." *Whiteland Woods, L.P. v. Township of W. Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999)(holding that township could preclude videotaping of a planning commission meeting).[10]

Here, Plaintiff's right of access is not meaningfully interfered with. First, they are able to attend proceedings, take notes, and report on them. Indeed, Plaintiff has volunteers attend arraignments to observe and gather information, which it uses to produce public reports both online and in writing. (Stipulation ¶ 3.)[11] It uses social media posts and meets with government officials about the bail system, using the information it collects through its access to court. (Stipulation ¶ 3; Complaint ¶¶ 9, 46.) Further, Reed – who is no longer a plaintiff – was able to attended preliminary arraignments at the Criminal Justice Center to compile information for the publication, *The Declaration*. (Complaint ¶¶ 42-43.)

In short, Plaintiff's ability to report on arraignments, educate the public, and advocate for its position belies its claim that it cannot report, comment on, and "spur debate" over bail.

---

[10] The Rules at issue here are content-neutral.

[11] For example, the Bail Fund participated in producing a 41 page report on arraignments in October 2018 and issued a press release on arraignments, among other reports. (Stipulation ¶¶ 59-60.)

Second, there are alternative means to obtain information about the bail set at arraignments in addition to attending hearings. One way is to access the publically available bail documents that are filed with the court after a preliminary arraignment, which include the bail bond, bail appeal report (if applicable), criminal complaint, and preliminary hearing subpoena. (Stipulation ¶¶ 33-34, Exhibits B-E.) The bail information is included on the bail bond, preliminary hearing subpoena, and bail appeal.

In addition, dockets – which also include bail information – for every case are available on-line for free after a preliminary hearing.[12] (Stipulation ¶¶ 35-37.) Thus, in contrast to Plaintiff's assertion, the public does not have to contemporaneously document a "vast amount of information" about a case during the arraignment. (Complaint ¶ 51.) Instead, they can get documents immediately after the arraignment that have information about the defendant, the charges, the bail set, and so forth.

Moreover, Plaintiff and the public have access to a data compilation of almost 50 fields of information pertinent to bail for every arraignment in Municipal Court for any selected period. (Stipulation ¶¶ 39-44.) These reports contain a wealth of information related to bail, the defendant (including race, gender, age, residence zip code), the charges, the judge, and so on. (Stipulation, Exhibit J.) The bulk data

---

[12] Docket sheets for Pennsylvania criminal cases, which include bail information, are accessible through the Commonwealth's Unified Judicial System Web Portal through the Common Pleas Case Management System. (Stipulation ¶¶ 35-37, Exhibit F.)

available to the public provides more readily available "objective data" about arraignments in Municipal Court (and throughout Pennsylvania) than the public could obtain for federal court arraignments and proceedings.[13] Further, the Philadelphia District Attorney's Office compiles statistical information on bail amount by offense category since 2014, in both raw and proportional values. (Stipulation ¶ 45.)

Thus, the public's ability to monitor and obtain objective facts on preliminary arraignments is not "hidden from public view," as Plaintiff claims in its Complaint. (Complaint ¶ 3.) Nor is there an "absence of any public record" of the proceedings. (Complaint ¶ 4.)

Plaintiff contends that access to audio records would allow Plaintiff to insert audio clips into its website and social media platforms, thereby highlighting the "human elements" and the "tone and tenor" of the arraignments. (Complaint ¶¶ 47-49) Of course, the same argument could be made about other media: inserting pictures and videos of the courtroom, the defendant, and the other participants would also highlight the "human aspects."[14] Yet the unique features of each do not create a First Amendment right where none exists.

---

[13] While there is a fee for these reports, there are fees for a multitude of court records, including transcripts, access to PACER in the federal courts, and so on.

[14] The Second Circuit put it succinctly: "[if] '[o]ne picture is worth more than ten thousand words,' the argument that appellant makes for a right to record could be made with equal force for a right to photograph. Yet, it is well settled that, insofar as courtroom proceedings are concerned, the latter right is not guaranteed by the Constitution." *Yonkers Bd. of Educ.*, 747 F.2d at 113.

Next, any claim that Judicial Defendants must allow recording because not everyone can attend proceedings does not make recording constitutionally mandated. To the contrary, one federal court has noted that "the inability of every interested person to attend the trial in person or observe it through the surrogate of the media does not raise a question of constitutional proportion," but rather raises a "question of social and political policy best left to the United States Congress and the Judicial Conference of the United States." *United States v. Moussaoui*, 205 F.R.D. 183, 186 (E.D. Va. 2002).

To the extent that Plaintiff believe that audio recordings are mandated to provide a further check on the judicial process, Justice Harlan noted that "it is impossible to believe that the reliability of a trial as a method of finding facts and determining guilt or innocence increases in relation to the size of the crowd watching it." *Estes,* 381 U.S. at 595 (Harlan, J., concurring). Instead, the "presence of interested spectators, attorneys, jurors and a judge" satisfies the safeguards of a public trial and the integrity of those proceedings. *Moussaoui*, 205 F.R.D. at 186. Even more, the public court documents and data for analysis available here provide even more safeguards.

Plaintiff's contention in the Complaint that the public relies on the media to report on preliminary arraignments does not mean that the First Amendment requires audio recording. *See United States v. Yonkers Bd. of Educ.,* 747 F.2d 111, 113 (2d Cir. 1984) (dismissing the plaintiff's claim that his asserted right to record was strengthened by the "public's right to know."); *see also PG Pub. Co. v. Aichele*,

705 F.3d 91, 99 (3d Cir. 2013)(holding that the media's right of access is no greater than the public's).

Plaintiff's policy opinions are just that: policy opinions. They do not create a First Amendment right to record proceedings. Pennsylvania has made a policy decision to not allow attendees to record courtroom proceedings. Plaintiff's arguments are better directed to the state rules committee, which has the authority to make recommended changes to the procedural rules to the Supreme Court of Pennsylvania.

Finally, that there are no official transcripts of the preliminary arraignments is of no moment. As noted above, there is no constitutional right to record to begin with; the right to attend and report is all that is required. The Third Circuit's decision in *United States v. Antar* is not relevant here. 38 F.3d 1348 (3d Cir. 1994). In *Antar*, the trial court closed jury voir dire proceedings and sealed the transcript of the proceedings. Thus, the right of access was interfered with – the public and press could not obtain information about the proceedings. The case at bar is not that case: the public is able to attend arraignments. Moreover, in *Antar* there was a voir dire transcript that was a "judicial record" subject to the right of access. *Id.* at 1351. Here, conversely, there is no such judicial record. Notably *Antar* does not hold that a court must create a record that does not exist. *See Cincinnati Enquirer v. Cincinnati Bd. of Educ.*, 249 F.Supp.2d 911, 917 (S.D. Ohio 2003)(holding that there is no First Amendment right to force the government to create a record that does not exist).

Moreover, whether transcripts were available in the multitude of cases holding that there is no First Amendment right to record was not a basis for their holdings. Instead, the issue is whether the right of access encompasses a right to make audio recordings – not whether there is an official transcript.[15]

Finally, Municipal Court's recording of arraignments for purely internal administrative and technical reasons is of no moment. These low-quality recordings are neither filed in a case nor relied on in making a judicial determination. Thus, they are not judicial records subject to the right of access (and Plaintiff has not brought such a claim, anyway). *See In re Avandia Mktg.,* 924 F.3d 662, 672 (3d Cir. 2019)(holding that the right of access applies to a particular document or record only if it is a "judicial record," which is a document that "has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.") In addition, the First Amendment does not guarantee the press "special access" to information not available to the public. *PG Pub. Co.*, 705 F.3d at 99)(quoting *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972)).

All in all, that Plaintiff cannot use audio clips to insert into its reports or an online article does not meaningfully restrict its access to court. Plaintiff has been

---

[15] Besides, just a transcript would not solve Plaintiff's claimed need for audio to provide the "human elements" and "tone and tenor." Thus, Plaintiff's argument that these elements require a new constitutional right could be made about any hearing even where there is a transcript: having a written transcript does not allow the highlighting of the human elements and tone and tenor of a proceeding that Plaintiffs seek.

able to report on arraignments, may continue to do so, and there are a wealth of additional resources available to buttress their reporting.

**B.    Plaintiff cannot state a right of expression claim: case law holds that recording public officials and court proceedings involves the right of access.**

Faced with the case law barring a right of access claim, Plaintiff attempted to avoid that obstacle when responding to Judicial Defendants' Motion to Dismiss by asserting that their claim is not a right to access, but a right of expression.[16] (Doc. 18.)

But case law concludes otherwise: the right to record judicial and related proceedings involves the right to access, not expression. The Third Circuit holds that the right to record police officers performing their duties in public is a right of access to information, not expression. *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017). At issue in *Fields* was whether the public has a "First Amendment right of access to information" about how "public servants operate in public." *Id.* 355. It was "not about whether Plaintiffs expressed themselves through conduct." *Id.*

The Court flat out rejected the plaintiff's contention that the case involved the right of expression – specifically the plaintiff's contention that recording is "inherently expressive conduct" – by stating that the case was not "about people attempting to create art with police as their subjects," but instead about recording

---

[16] The Complaint does not state whether Plaintiff is advancing a right to access, right of expression, or both.

them performing their official duties. *Id.* at 359. Hence, the court held that the right at issue was the "right of access." *Id.* at 360. *See also S.H.A.R.K. v. Metro Parks Serving Summit Co.*, 499 F.3d 553, 559 (6th Cir.2007)(clarifying that the public's right to record involves the right to access information, not freedom of expression); *McKay v. Federspiel*, 2014 WL 1400091, at *10 (E.D. Mich. 2014)(rejecting a right of expression analysis).[17]

Thus, this case does not involve a right of expression, despite what Plaintiff may wish to call it (like the plaintiff in *Fields* tried to do). It is a right of access case. Yet even if the issue here were expression, Plaintiff's claims would still come up short.

In determining whether the First Amendment protects a right of expression on government property, the court must first examine the nature of the forum in which the speech is restricted – whether the forum is public or nonpublic. *Pomicter v. Luzerne Co. Convention Ctr. Auth.*, 939 F.3d 534, 539-40 (3d Cir. 2019).

When it comes to courtrooms, the circuit courts hold that a courtroom is a nonpublic forum. *See Huminski v. Corsones*, 396 F.3d 53, 91 (2d Cir. 2005)(collecting cases); *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005), *cert. denied*, 547 U.S. 1111 (2006); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997), *cert. denied*, 523 U.S. 1023 (1998).

---

[17] The *Whiteland Woods* court also used a right to access analysis, noting that the plaintiff did not allege a speech or expression claim. *Whiteland Woods*, 193 F.3d at 183. Nonetheless, the court analyzed the case as a time, place, and manner restriction. *Id.*

Because courtrooms are considered nonpublic forums, "the First Amendment rights of everyone . . . are at their constitutional nadir." *Kraska v. Clark*, 2015 U.S. Dist. LEXIS 109843 (M.D. Pa. 2015)(quoting *Mezibov*, 411 F.3d at 718); *see also Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991)("It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed").

Plaintiff argued in response to the Motion to Dismiss that *Fields* should apply here. Yet the plaintiff in *Fields* attempted to record police activity on a public sidewalk and at the Philadelphia Convention Center. And other cases upholding the right to record police officers involve them performing their duties in public forums. *See e.g. Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011)(the Boston Common, "the oldest city park in the United States and the apotheosis of a public forum."); *Turner v. Driver*, 848 F.3d 678, 683 (5th Cir. 2017)(public sidewalk).[18]

Thus, since the protected activity in *Fields* and other police recording cases involved forums markedly different from a courtroom, those cases' outcomes are not applicable to this matter. *See McKay*, 22 F.Supp.3d at 735 (rejecting a claim that

---

[18] In *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court noted that a courtroom is a "public place where the people generally – and representatives of the media – have a right to be present." 448 U.S. 555, 578 (1980). Yet the court did not hold that a courtroom is a public forum – it was not conducting a forum analysis. Moreover, the court simply stated that the public and media have a "right to be present," which is also not at issue here. Three years later, the court held that merely because the public is allowed to "come and go at will" in a place does not make it a public forum. *United States v. Grace*, 461 U.S. 171, 177 (1983).

the existence of a First Amendment right to record government officials in public places confers a right to record courtroom proceedings).

Because a courtroom is a nonpublic forum, the government has more "flexibility to craft rules limiting speech." *Pomicter*, 939 F.3d at 540. The government may reserve a nonpublic forum for its "intended purposes, communicative or otherwise," provided that the regulation on speech is "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*

The reasonableness question turns on whether the government's policy is "reasonable in light of the purpose served by the forum." *Id.* at 541. The government's burden is "light" and a "low bar": it need only provide a legitimate explanation based on the forum's purposes and surrounding circumstances. *Id.* at 541, 543. When it comes to reasonableness, the regulation need not be the "most reasonable or the only reasonable regulation possible" – it just needs to be reasonable. *Id.* Thus, whether there are "other strategies" is irrelevant, and there is no need for restrictions to be narrowly tailored. *Id.* at 545.

Further, the government does not have to wait until "havoc is wreaked" to restrict access. *Id.* Instead, it may act ahead of time to prevent possible issues, like those set forth below.

**Potential prejudice to the criminal defendants and the court system.**

In making a policy decision to not allow the public and press to make audio recordings, Pennsylvania and Municipal Court have made a reasonable decision to mitigate potential prejudice to defendants and to the court system.[19]

First, bail hearings often contain prejudicial evidence that would be inadmissible during a trial and, therefore, courts "should show heightened concern about the threat that the public dissemination of such inadmissible evidence would have on the accused right to a fair trial." *In re Globe Newspaper Co.*, 729 F.2d 47, 59 (1st Cir. 1984). Indeed, the First Circuit notes that a defendant's "privacy and fair trial interests" are at their "zenith during the bail hearings, since they have not yet had an opportunity to test the material admitted at the hearings." *Id.*

The Supreme Court has recognized that "adverse publicity can endanger" a defendant's ability to receive a fair trial. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979). For that reason, courts have an "affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Id.* Indeed, the "central aim of a criminal proceeding must by to try the accused fairly," and the "public-trial guarantee" is for a defendant's benefit, not the public's. *Waller v. Georgia*, 467 U.S. 39, 46 (1984)(addressing the Sixth Amendment right to a public trial).

---

[19] The Supreme Court of Pennsylvania has the authority to promulgate rules of procedure and judicial administration. Pa. Const. Art. V, § 10(c). Municipal Court has the power to adopt local rules affecting the court's administration. Pa.R.J.A. 103.

In the instant case, many factors go into a bail decision that could have prejudicial effects on a defendant's right to obtain a fair trial. As outlined above, these include the defendant's criminal history, drug abuse issues, mental condition, and a history of flight or escape. *See* Pa.R.Crim.P. 523(A).

In fact, the American Bar Association and other federal courts have recognized that information such as a "prior criminal record," a defendant's "confessions, admissions, or statements," and a defendant's refusal to submit to a test or examination (and the outcome of such tests) are "substantially likely to be considered materially prejudicial to ongoing criminal proceedings." *See* ABA Model Rules of Professional Conduct 3.6, cmt; M.D. Pa. LR 83.2; W.D. Pa. LCrR. 83.C. While the context of these rules applies to attorneys in a case, they are instructive because they recognize that the similar information (criminal record, history of flight, confessions and statements, and so on) discussed at a preliminary arraignment is potentially prejudicial.

Thus, to allow audio recordings of a defendant's own words about these matters would endanger a defendant's right to a fair trial. A person could post audio of a defendant admitting to prior criminal acts, drug abuse, escape, and other matters that would not be admissible at trial, thereby prejudicing their right to a fair trial. Indeed, a defendant may inadvertently discuss the crimes that they are

charged with.[20] In addition, the court may order a defendant to stay away from a victim or witnesses, information that could potentially endanger those persons.

Moreover, a defendant and their counsel may be unwilling to discuss mental health, drug-related issues, and other relevant bail factors if they know that the media may rebroadcast their statements, which would affect the bail decision by limiting the relevant information that the magistrate needs. *Cf. McKay*, 2014 WL 7013574, at *6 (recognizing that a witness may be less forthcoming if their answers were being recorded). While the media can report all this information now by observing the proceedings, limiting it to reporting as opposed to allowing rebroadcasting of audio recordings – including the defendant's own voice – is a safeguard that mitigates against potential prejudice.

In fact, Plaintiff makes this point: it notes that audio recordings "fundamentally change" the reporting's substance and convey the "human aspects" more powerfully. (Complaint ¶ 43.) It is this type of potential prejudice that Municipal Court seeks to avoid – the impact on a defendant's ability to receive a fair trial is increased if that defendant's own words and voice are broadcast on the internet and elsewhere.

What is more, although Plaintiff points out that its recordings can be made with silent handheld devices, whether those devices are physically less intrusive does not curtail these potential prejudices. Whether recordings can be made in "less

---

[20] Plaintiff's October 2018 Bail Watch Report notes that defendants occasionally discuss the underlying facts of their case during an arraignment. (Stipulation ¶ 59, https://perma.cc/9Y29-W4SA, at page 25.)

disruptive" ways is irrelevant: there is no First Amendment right to record to begin with. *See McKay*, 22 F.Supp.3d at 736 (rebuffing a claim that "technological advances" require courtroom recording).

In addition, allowing audio recording will place a burden on the magistrate and court officials to monitor court attendees to ensure that the devices are silent, that the devices capture only audio as opposed to video, and so on. By having a preventive rule, the state court has made a reasonable policy decision to avoid these issues, allow magistrates and court participants to focus on the proceedings, and ensure decorum.[21]

In sum, there is no First Amendment right to record courtroom proceedings. Courts have not extended the First Amendment to require courts to allow the public or media to make audio recordings. The question, instead, is left to each court and judicial system as a policy matter – as the Supreme Court in *Chandler v. Florida* recognized. 449 U.S. 560, 574 (1981). Pennsylvania and Municipal Court have made a reasonable policy decision consistent with longstanding case law to mitigate the potential prejudice to criminal defendants, and to ensure the decorum of court proceedings, while still allowing the public and media access to court, the ability to report on arraignments, and access to court filings and information.

---

[21] What is more, it cannot be assumed that other persons or entities will make audio recordings for simply reporting on proceedings. Attendees would have free reign to record audio of the participants and easily publish it on the internet and elsewhere for prejudicial reasons. Municipal Court and the magistrates tasked with conducting arraignments cannot ascribe the intent, purpose, or motive to every courtroom observer before a violation takes place.

## IV.    Conclusion

Judicial Defendants respectfully request that this Honorable Court grant their Motion and enter judgment in their favor.

Respectfully Submitted,

<u>s/**Michael Daley**</u>
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
MEGAN L. DAVIS, ESQUIRE
Attorney I.D. No. PA 321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6300, Fax: (215) 560-5486

*Counsel for Defendants Arraignment Court Magistrate Judges Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Jane Rice, and Robert Stack and President Judge Patrick Dugan*

Exhibit A

# IN THE SUPREME COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | **:** | No. 522 |
| | **:** | |
| AMENDMENT OF RULE 1910 OF THE | **:** | JUDICIAL ADMINISTRATION DOCKET |
| RULES OF JUDICIAL ADMINISTRATION | **:** | |

## <u>AMENDED ORDER</u>

**PER CURIAM**

    **AND NOW,** this 8th day of October, 2019, it is Ordered pursuant to Article V, Section 10 of the Constitution of Pennsylvania that Rule 1910 of the Rules of Judicial Administration is amended in the attached form**.**

    To the extent that notice of proposed rulemaking would otherwise be required by Pa.R.J.A. No. 103, the immediate promulgation of the amendment is found to be in the interest of efficient administration.

    This Order shall be processed in accordance with Pa.R.J.A. No. 103(b), and the amendments shall be effective on January 1, 2020.

Additions are **bolded** and are underlined.
Deletions are **bolded** and are [bracketed].

Rule 1910.  Broadcasting, **Recording and Photography** in the Courtroom

**A.     General statutory prohibition.  It is unlawful and a criminal offense to use or operate a device to capture, record, transmit or broadcast a photograph, video, motion picture or audio of a proceeding or person within a judicial facility or in an area adjacent to or immediately surrounding a judicial facility without the approval of the court or presiding judicial officer or except as provided by rules of court.  *See* 18 Pa.C.S. § 5103.1 (relating to unlawful use of an audio or video device in court).**

**B.     General rule.**  Unless otherwise provided by **this rule or by** the Supreme Court of Pennsylvania, judges **[should] shall** prohibit broadcasting, televising, recording or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:

[A.] **(1)** the use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record or for other purposes of judicial administration;

[B.] **(2)** the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings;

[C.] **(3)** the photographic or electronic recording and reproduction of appropriate court proceedings under the following conditions:

[(1)] **(a)** the means of recording will not distract participants or impair the dignity of the proceedings; **[and]**

[(2)] **(b)** the parties have consented; and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproductions; **[and]**

[(3)] **(c)** the reproduction will not be exhibited until after the proceeding has been concluded and all direct appeals have been exhausted; and

[(4)] **(d)** the reproduction will be exhibited only for instructional purposes in educational institutions.

[D.] **(4)** the use of electronic broadcasting, televising, recording and taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between

sessions of any trial court nonjury civil proceeding**[,];** however, for the purposes of this subsection, "civil proceedings" shall not be construed to mean a support, custody or divorce proceeding. **Paragraphs (c) and (d) of** Subsection **[3] (3) [and 4]** shall not apply to nonjury civil proceedings as heretofore defined. No witness or party who expresses any prior objection to the judge shall be photographed**,** nor shall the testimony of such witness or party be broadcast or telecast. Permission for the broadcasting, televising, recording and photographing of any civil nonjury proceeding shall have first been expressly granted by the judge, and under such conditions as the judge may prescribe in accordance with the guidelines contained in this rule.

\*\*\*\*

**C.** **Law Enforcement Officers, Sheriff's Department Officers, and Judicial Security Officers.**

**(1)** **Unless expressly prohibited by local rule or order of court as authorized by Subsection (5), and except as otherwise provided in this Subdivision C, officers of law enforcement agencies, sheriffs and deputy sheriffs, and judicial security officers (referred to collectively as "Officers") may wear body cameras as part of their standard equipment and operate them as permitted by law or by state or local court rule, and as may be further authorized under the policies of the agency with which the Officer is associated.**

**(2)** **No body camera may be activated in a courtroom during judicial proceedings except when an Officer, in his or her professional opinion, determines that there is an actual or imminent emergency situation warranting activation in the ordinary course of his or her duties. In such an emergency situation, an Officer may activate his or her body camera until such time as, in his or her professional judgment, the emergency situation has concluded.**

**(3)** **When an Officer activates a body camera in a courtroom as permitted by paragraph (2), he or she shall verbally notify the presiding judge at the first reasonable opportunity after the body camera has been activated. Also, within one business day of the emergency incident, the Officer or his or her supervisor shall provide to the presiding judge a written report of the circumstances surrounding the activation of the body camera, including the times of activation and deactivation and an explanation of the Officer's actions. The presiding judge shall promptly share the activation report with judicial district court administration. The activation report also shall be provided to the law enforcement agency with which the Officer is associated.**

(4)    Any recording made in a courtroom during a judicial proceeding may not be released to anyone outside the court and the law enforcement agency with which the Officer is associated without the express written approval of the president judge of the court.  Use and dissemination of a recording made under this Subdivision C in connection with law enforcement activity shall require the express written approval of the president judge.

(5)    A judicial district may adopt local rules or protocols regulating the use, operation and activation of body cameras in any location and space that is controlled by the judicial district and used in the ordinary course of its business, including a courtroom.

(6)    A court and any law enforcement agency providing security services in the courtroom shall enter into a written agreement conforming to this rule and any local rule or protocol promulgated by the judicial district.  At minimum, the agreement shall require the agency to (i) inform its officers of their responsibilities under the rule; (ii) provide training to its officers regarding the requirements of the rule, including training of new officers before they are permitted to activate a body camera in the courtroom; (iii) require annual written certification by a responsible representative of the law enforcement agency that the agency's officers have been informed of their responsibilities under the rule and have received proper training; and (iv) monitor their officers' compliance.

(7) Each law enforcement agency that provides security services to a court or judicial district shall provide to the district court administrator a copy of its current policies regarding use of body cameras, as well as a list of those Officers assigned to a court or judicial district who are qualified to wear and use body cameras.

Exhibit B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **PROCEDURES REGARDING THE** | : | **STANDING ORDER** |
| **POSSESSION AND USE OF CAMERAS** | : | |
| **AND PERSONAL ELECTRONIC** | : | |
| **DEVICES BY VISITORS TO UNITED** | : | |
| **STATES COURTHOUSES AND OTHER** | : | |
| **FEDERAL COURT LOCATIONS IN** | : | |
| **THE EASTERN DISTRICT OF** | : | |
| **PENNSYLVANIA** | : | |

Effective June 3, 2019, the United States Marshal will implement a new procedure to regulate the possession and use of cameras and personal electronic devices, such as cellular telephones, smart phones, laptop computers, recording devices, and tablet computers, by all visitors to all United States courthouses and other federal court locations in the Eastern District of Pennsylvania. This procedure is intended to ensure the personal security and privacy of parties, witnesses, judges, jurors, and counsel involved in court proceedings.

The Court orders the following:

1. All cameras and personal electronic devices shall be subject to inspection upon entry at all designated court security checkpoints. Such devices may not be used in violation of Federal Rule of Criminal Procedure 53 (prohibiting courtroom photography and broadcasting in criminal cases), and Local Civil Rule 83.3 (prohibiting courtroom photography and broadcasting in all cases, except upon approval by the Chief Judge for investiture, ceremonial, or naturalization proceedings);

2. Subject to the exemptions set forth in Paragraph 4 of this Standing Order, all cameras, cellular telephones, smart phones, and similarly sized personal electronic devices shall be turned off in the presence of court security officers upon entry to the courthouse and placed in a locked pouch provided by the U.S. Marshal. Devices shall remain in the locked pouch in the possession of the owner while in the courthouse;

3. The locked pouch may not be intentionally opened, damaged, or tampered with while in the visitor's possession, and must be returned to the court security officers before leaving the courthouse, at which time the personal electronic device will be returned to the visitor. Intentional damage to, or theft of, the locked pouch will subject the visitor to possible criminal penalties;

4. Unless otherwise ordered by the Chief Judge, or the presiding judge in a specific case, only the following persons shall be exempt from placing their personal electronic devices in a locked pouch:

    a. All attorneys with either a valid bar identification card or credentials of the U.S. Department of Justice or the Office of the Federal Public Defender;

    b. Summoned and seated petit or grand jurors, subject to any restrictions imposed by the presiding judge;

    c. Judicial officers, employees of the U.S. District Court or the U.S. Court of Appeals for the Third Circuit, and other federal court employees on official business with valid court-issued identification;

    d. Volunteer law clerks and/or interns for the U.S. District Court or the U.S. Court of Appeals for the Third Circuit with valid court-issued identification or documentation;

    e. Law enforcement officials on official business with valid identification or badge;

    f. Members of the press or media representatives on official business with valid identification from their news organization, whose electronic devices must be turned off (not on silent or vibrate mode) before entering the courtroom;

5. Any person listed as exempt in Paragraph 4 shall comply with the ban on photography, broadcasting, and recording in Federal Rule of Criminal Procedure 53 and Local Civil Rule 83.3, and shall not allow their camera or personal electronic device to be used by others, or used in violation of any law, rule, or judicial order.


Hon. Juan R. Sánchez
Chief Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| MERRY REED, et al. | : | | |
| *Plaintiffs,* | : | CIVIL ACTION | |
| | : | | |
| v. | : | | |
| | : | No. 19-3110 | |
| ARRAIGNMENT COURT MAGISTRATE | : | | |
| JUDGE FRANCIS BERNARD, et al., | : | | |
| | : | Hon. Harvey Bartle, III | |
| *Defendants* | : | | |

### Certificate of Service

The undersigned certifies that on *December 20, 2019*, he caused the foregoing

*Motion for Summary Judgment* and *Brief in Support* via CM/ECF to all counsel of

record

<div style="margin-left: 40%">

**/S/ Michael Daley**
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6300, Fax: (215) 560-5486

</div>