UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

**PHILADELPHIA BAIL FUND,**

        *Plaintiffs*,

**v.**                                                                 Civil Action No. 2:19-3110

**ARRAIGNMENT COURT MAGISTRATE
JUDGES FRANCIS BERNARD, SHEILA
BEDFORD, KEVIN DEVLIN, JAMES
O'BRIEN, JANE RICE, and ROBERT
STACK, in their official capacities;
PRESIDENT JUDGE PATRICK DUGAN,
in his official capacity; SHERIFF
JEWELL WILLIAMS, in his official
capacity,**

        *Defendants*.


_____


## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      Plaintiff Philadelphia Bail Fund, by and through its undersigned counsel, respectfully

moves this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Through this motion, Plaintiff requests an order and judgment declaring that Pennsylvania Rule

of Criminal Procedure 112(C), Pennsylvania Rule of Judicial Administration 1910, and Local

Arraignment Court Magistrate Rule 7.09 are unconstitutional as applied by Defendants to

prohibit Plaintiff from recording preliminary arraignments (i.e., bail hearings) in the Philadelphia

Municipal Court.  In support of this motion, Plaintiff incorporates by reference its brief in

opposition to Defendants' motions to dismiss (ECF No. 18), the parties' stipulation of facts (ECF

No. 31), the declaration of Malik Neal (ECF No. 34), and the accompanying brief in support of the motion for summary judgment.

Dated:  December 20, 2019               Respectfully submitted,

                                         _/s/  Nicolas Y. Riley_____

MICHAEL BERRY                      NICOLAS Y. RILEY*
PAUL J. SAFIER                       ROBERT D. FRIEDMAN*
SHAWN F. SUMMERS           INSTITUTE FOR CONSTITUTIONAL ADVOCACY &
BALLARD SPAHR LLP                 PROTECTION
1735 Market Street, 51st Floor     GEORGETOWN UNIVERSITY LAW CENTER
Philadelphia, PA 19103          600 New Jersey Avenue NW
Tel.:  215-665-8500              Washington, DC 20001
Fax:  215-864-8999             Tel.:  202-662-4048
berrym@ballardspahr.com     Fax:  202-662-9248
safierp@ballardspahr.com      rdf34@georgetown.edu
summerss@ballardspahr.com    nr537@georgetown.edu
                                        *  _Admitted pro hac vice._

                                        _Counsel for Plaintiffs_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————

**PHILADELPHIA BAIL FUND,**

        *Plaintiff,*

**v.**

**ARRAIGNMENT COURT MAGISTRATE
JUDGES FRANCIS BERNARD, SHEILA
BEDFORD, KEVIN DEVLIN, JAMES
O'BRIEN, JANE RICE, and ROBERT
STACK, in their official capacities;
PRESIDENT JUDGE PATRICK DUGAN,
in his official capacity; SHERIFF
JEWELL WILLIAMS, in his official
capacity,**

        *Defendants.*

Civil Action No. 2:19-3110

—————————————————————

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

MICHAEL BERRY
PAUL J. SAFIER
SHAWN F. SUMMERS
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel.:  215-665-8500
Fax:  215-864-8999
berrym@ballardspahr.com
safierp@ballardspahr.com
summerss@ballardspahr.com

December 20, 2019

NICOLAS Y. RILEY *
ROBERT D. FRIEDMAN *
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
   & PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW
Washington, DC 20001
Tel.:  202-662-4048
Fax:  202-662-9248
rdf34@georgetown.edu
nr537@georgetown.edu
* Admitted to practice *pro hac vice*.

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................iii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.      The public-forum doctrine does not apply to restrictions on the public's ability to document the activities of government officials that occur in public view.................... 2

II.    Even if the public-forum doctrine applied here, the recording ban would still violate the First Amendment. ....................................................................................... 7

      A.     Banning audio recording does not advance any purpose of the forum. ................. 9

      B.     The record shows that the recording ban is an unreasonable means of safeguarding fair trial and privacy rights. ........................................................... 11

      C.     The bail magistrates' conjectural and counterfactual claims about how arrestees would behave in the absence of the recording ban does not render the ban reasonable. .............................................................................................. 13

CONCLUSION ......................................................................................................................... 15

PROPOSED ORDER

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Animal Legal Def. Fund v. Wasden,*
  878 F.3d 1184 (9th Cir. 2018) ............................................................................................ 4, 5

*Berner v. Delahanty,*
  129 F.3d 20 (1st Cir. 1997) ...................................................................................................... 5

*Child Evangelism Fellowship of New Jersey Inc. v. Stafford Twp. Sch. Dist.,*
  386 F.3d 514 (3d Cir. 2004) ...................................................................................................... 8

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
  473 U.S. 788 (1985) ...................................................................................................................... 3

*Cox Broad. Corp. v. Cohn,*
  420 U.S. 469 (1975) .................................................................................................................... 12

*Enoch v. Hogan,*
  728 F. App'x 448 (6th Cir. 2018) ........................................................................................ 5, 6

*Fields v. City of Philadelphia,*
  862 F.3d 353 (3d Cir. 2017) ........................................................................................ 1, 2, 3, 4

*Goldschmidt v. Coco,*
  413 F. Supp. 2d 949 (N.D. Ill. 2006) ....................................................................................... 7

*Heffron v. Int'l Soc. For Krishna Consciousness, Inc.,*
  452 U.S. 640 (1981) ...................................................................................................................... 4

*Huminski v. Corsones,*
  396 F.3d 53 (2d Cir. 2005) ......................................................................................................... 5

*Iacobucci v. Boulter,*
  193 F.3d 14 (1st Cir. 1999) ....................................................................................................... 5

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee,*
  505 U.S. 672 (1992) ...................................................................................................................... 4

*Int'l Soc. for Krishna Consciousness, Inc. v. New Jersey Sports & Exposition Auth.,*
  691 F.2d 155 (3d Cir. 1982) .............................................................................................. 3, 4, 6

*Linmark Assocs., Inc. v. Willingboro Twp.,*
  431 U.S. 85 (1977) ...................................................................................................................... 12

*Lloyd Corp., Ltd. v. Tanner,*
  407 U.S. 551 (1972) ...................................................................................................................... 4

*McKay v. Federspiel,*
  No. 14-CV-10252, 2014 WL 7013574 (E.D. Mich. Dec. 11, 2014) .......................................... 6

*Mezibov v. Allen,*
    411 F.3d 712 (6th Cir. 2005) ................................................................ 5, 6

*Miller v. City of Cincinnati,*
    622 F.3d 524 (6th Cir. 2010) ..................................................................... 9

*Minnesota Voters All. v. Mansky,*
    138 S. Ct. 1876 (2018) ............................................................................... 3

*NAACP v. City of Philadelphia,*
    834 F.3d 435 (3d Cir. 2016) .......................................................... 9, 10, 13

*New England Reg'l Council of Carpenters v. Kinton,*
    284 F.3d 9 (1st Cir. 2002)) ......................................................................... 8

*Northeast Pa. Freethought Soc'y v. County of Lackawanna Transit Sys.,*
    938 F.3d 424 (3d Cir. 2019) ................................................................. 8, 11

*Pomicter v. Luzerne Cty. Convention Ctr. Auth.,*
    939 F.3d 534 (3d Cir. 2019) ................................................ 4, 8, 11, 12, 14

*Robinson v. Fetterman,*
    378 F. Supp. 2d 534 (E.D. Pa. 2005) ........................................................ 5

*United States v. Columbia Broadcasting System,*
    497 F.2d 102 (5th Cir. 1974) ..................................................................... 7

*United States v. Criden,*
    675 F.2d 550 (3d Cir. 1982) ...................................................................... 6

*United States v. Gilbert,*
    920 F.2d 878 (11th Cir. 1991) ................................................................... 5

*United States v. Marcavage,*
    609 F.3d 264 (3d Cir. 2010) ...................................................................... 3

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ................................................................................... 4

*Whiteland Woods, L.P. v. Township of West Whiteland,*
    193 F.3d 177 (3d Cir. 1999) ...................................................................... 1

**Rules**

Pa. R. Crim. P. 115 ........................................................................... 13, 14

# INTRODUCTION

This suit challenges the application of court rules that prohibit members of the public from audio-recording bail hearings in Philadelphia's Criminal Justice Center (CJC). The Philadelphia Bail Fund outlined why those rules violate the First Amendment in its October 2019 brief opposing Defendants' motions to dismiss. *See* ECF No. 18 (Pls.' Response in Opp. MTDs). As that brief explained, the recording ban infringes the Bail Fund's right to record government officials performing their duties in public—a right the Third Circuit expressly recognized in *Fields v. City of Philadelphia*, 862 F.3d 353, 356 (3d Cir. 2017). In addition, the recording ban is also unconstitutional under the Third Circuit's decision in *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999), because the ban "meaningfully interferes" with the public's ability to document what occurs during bail hearings, especially in light of the fact that the proceedings happen off the record.

The Bail Fund stands by both of those arguments and maintains that the Court could decide this case under either theory. For the purposes of this brief, however, the Bail Fund will focus on the first of these theories and, in particular, on the bail magistrates' argument (raised in their reply to the Bail Fund's earlier brief ) that *Fields* does not apply because "a courtroom is a *nonpublic* forum." ECF No. 19 (Bail Magistrates' Reply to MTD), at 3 (emphasis in original). As explained below, the bail magistrates' argument is mistaken for two reasons. First, the public-forum doctrine does not apply to restrictions on the kind of First Amendment activity at issue here—namely, documenting government activity that occurs in public view. *See infra* Part I. Second, even if the public-forum doctrine did apply here, the Bail Fund would still prevail under that doctrine in light of Defendants' failure to show that the recording ban is reasonable in the bail-hearing context. *See infra* Part II. For those reasons, and all of the other

reasons set forth in the Bail Fund's prior brief, this Court should grant summary judgment to the Bail Fund.[1]

**ARGUMENT**

I.     **The public-forum doctrine does not apply to restrictions on the public's ability to document the activities of government officials that occur in public view.**

*Fields* set forth a straightforward test for evaluating the constitutionality of restrictions on the public's ability to record public officials "carrying out official duties in public places." 862 F.3d at 358. Under that test, the government may limit a citizen's ability to record such conduct only through "reasonable time, place, and manner restrictions." *Id.* at 360; *see also* ECF No. 18, at 9-15 (describing the "time, place, and manner" test and applying it to the recording ban at issue here). As *Fields* recognized, "in public places these restrictions are restrained." 862 F.3d at 360.

Rather than adhere to the framework set forth in *Fields*, the bail magistrates urge this Court to analyze the Bail Fund's claim under the public-forum doctrine. *See* ECF No. 19 (Bail Magistrates' Reply to MTD), at 1-3. They argue, in particular, that evaluating the Bail Fund's claim under *Fields* "ignores the important distinctions between different forums." *Id.* at 2. But nothing in *Fields*—or any other Third Circuit case—suggests that the public's right to record government activity in "public places" should turn on how a court would classify the recording location under public-forum principles.

Courts use the public-forum doctrine to determine what level of First Amendment scrutiny applies to restrictions imposed on people's speech and expressive conduct in

---

[1] The Bail Fund incorporates by reference all of the arguments raised in its earlier brief and all of the arguments raised during the November 2019 hearing on the motions to dismiss. The Bail Fund also incorporates by reference the stipulated statement of facts submitted by the parties on December 11, 2019. *See* ECF No. 31 (Stipulation of Facts).

"government-controlled spaces." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018); *see generally Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) ("[T]he Government, 'no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.' " (citation omitted)). The Supreme Court's public-forum jurisprudence "recognize[s] three types of government-controlled spaces: traditional public forums, designated public forums, and nonpublic forums." *Id.* The government's ability to restrict speech is at its nadir in traditional public forums and at its zenith (though still not unlimited) in nonpublic forums. *Id.* In determining how to classify a particular location, courts typically examine the location's "physical traits as well as its past uses and purposes." *United States v. Marcavage*, 609 F.3d 264, 275 (3d Cir. 2010).

The public-forum doctrine provides a useful tool for analyzing restrictions on First Amendment activities—like protests, parades, or picket lines—that threaten to disrupt other uses of government or public property. *See Int'l Soc. for Krishna Consciousness, Inc. v. New Jersey Sports & Exposition Auth.*, 691 F.2d 155, 161 (3d Cir. 1982) ("Generally, the need to maintain public order justifies greater restrictions on *active* conduct such as picketing than on speech." (emphasis added)). But the doctrine is ill-suited to analyze restrictions on other types of First Amendment activities—such as recording government officials' public conduct—aimed at gathering information or creating speech for *subsequent* expression.

Consider, for instance, how poorly the doctrine would apply in a case where the police sought to prevent a journalist from recording an officer's assault on a private citizen in a public place. All of the First Amendment interests identified in *Fields* would counsel strongly in favor of protecting the journalist's ability to record the assault for subsequent dissemination— regardless of where in public the assault occurred. *See Fields*, 862 F.3d at 359 (emphasizing that

recordings "facilitate discussion because of the ease in which they can be widely distributed via different forms of media"). There is no reason why the act of recording should be entitled to a greater level of constitutional protection if the arrest had occurred in a park or on a sidewalk (traditional public forums) than if it had occurred at a state fair (a "limited" public forum), inside an airport terminal (a nonpublic forum), or at a shopping center (private property).[2]

Indeed, *Fields* itself implicitly recognized that the right to record government conduct extends to nonpublic forums. One of the plaintiffs in *Fields* sought to record police activity at the entrance of a public convention center[3]—a type of public space that the Third Circuit has repeatedly treated as a nonpublic forum. *See Pomicter v. Luzerne Cty. Convention Ctr. Auth.*, 939 F.3d 534, 539 (3d Cir. 2019); *Int'l Soc. for Krishna Consciousness*, 691 F.2d at 161. Nevertheless, the court in *Fields* held that the plaintiff's recording efforts were constitutionally protected. *Id.* at 360. And it did so without engaging in any public-forum analysis. In other words, neither *Fields*'s holding nor its language supports the bail magistrates' claim that the decision rested on an implicit public-forum analysis.

Other courts—including this one—have similarly recognized a right to record matters of public interest on both private and public property, without suggesting that the level of scrutiny turns on the type of "public place" where the recording is made. *See, e.g., Animal Legal Def.*

---

[2] *See generally Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989) (characterizing public parks as "traditional public forums"); *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981) (characterizing a state fair as a "limited public forum"); *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680-81 (1992) (characterizing airport terminals as nonpublic forums); *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 570 (1972) (rejecting argument that a privately owned shopping center is a public forum).

[3] *See Fields*, 863 F.3d at 356 (noting that one of the plaintiffs was filming police during a "protest at the Philadelphia Convention Center"); *Fields*, No. 16-1650 (3d Cir.), Joint Appendix, at JA-35 (noting that the plaintiff was "right at the main front doors to the convention center").

*Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018) (recognizing right to record agricultural production activities inside private agricultural plants); *Enoch v. Hogan*, 728 F. App'x 448, 456 (6th Cir. 2018) (recognizing right to record press conference in a courthouse corridor); *Iacobucci v. Boulter*, 193 F.3d 14, 25 (1st Cir. 1999) (recognizing right to record local-government officials in a town-hall corridor); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 539-41 (E.D. Pa. 2005) (recognizing right to record state troopers inspecting trucks on a public highway). These cases undercut the bail magistrates' effort to inject a forum-based analysis into the *Fields* framework.

The bail magistrates' own cited cases only further highlight why the public-forum doctrine provides a poor framework for analyzing this case. The bail magistrates cite a handful of cases for the proposition that the "courtroom is a *nonpublic* forum." ECF No.19, at 3. But all of those cases deal with restrictions on conduct—specifically, protest activity and attorney speech—involving actual, contemporaneous expression inside the courtroom. *See Huminski v. Corsones*, 396 F.3d 53, 63 (2d Cir. 2005) (restriction on displaying protest signs on courthouse grounds); *Mezibov v. Allen*, 411 F.3d 712, 719 (6th Cir. 2005) (restriction on attorney speech during judicial proceedings); *Berner v. Delahanty*, 129 F.3d 20, 22 (1st Cir. 1997) (restriction on attorney's ability to wear political buttons in court); *United States v. Gilbert*, 920 F.2d 878, 880 (11th Cir. 1991) (restriction on protest activity on courthouse grounds).[4] None of those cases

---

[4] Most of these cases are inapposite for other reasons, as well. *Mezibov*, for instance, was not even decided on a public-forum rationale; rather, the court invoked the public-forum doctrine only to bolster its (unrelated) holding that an attorney is "not engaged in free expression" when "filing motions and advocating for his client in court." 411 F.3d at 720. And *Huminski* and *Gilbert* both dealt with expressive conduct occurring on courthouse grounds generally—rather than courtrooms specifically—and both acknowledged that citizens retain First Amendment rights inside courthouses. *See Huminski*, 396 F.3d at 89 n.34 (acknowledging that citizens still retain the right to attend and observe court proceedings); *Gilbert*, 920 F.2d at 886 (acknowledging that court officials could not prohibit the plaintiff "from wearing expressive paraphernalia and speaking about anything he wishes inside the building" when he is lawfully present there).

provides any guidance for evaluating restrictions on the type of First Amendment activity at issue here—namely, *gathering* and *documenting* information about court proceedings for later use *outside* the courtroom.[5]  The bail magistrates' reliance on those cases therefore ignores a basic doctrinal reality: the fact that a government property may be considered a nonpublic forum for *some* types of First Amendment activity does not convert it into a nonpublic forum for *all* types of First Amendment activity.  *See, e.g.*, *Int'l Soc. for Krishna Consciousness*, 691 F.2d at 161 ("[C]ivil rights protesters may keep a silent vigil in a segregated library, although they may not deliver a speech in the reading room.").

   That is especially true with respect to the CJC's bail-hearing courtroom.  While the bail-hearing courtroom is undoubtedly a nonpublic forum with respect to many kinds of (potentially disruptive) speech, that does not give court officials carte blanche to treat the courtroom as a nonpublic forum for all other types of First Amendment activity.  For instance, court officials could not constitutionally prohibit people from attending and observing the bail hearings.  *See United States v. Criden*, 675 F.2d 550, 557 (3d Cir. 1982) (holding that the First Amendment precludes court officials from restricting public access to criminal pretrial proceedings absent a compelling government interest).  Nor could they constitutionally prohibit people from taking notes on the proceedings or sketching the participants.  *See United States v. Columbia*

---

[5]  Although *McKay v. Federspiel*, No. 14-CV-10252, 2014 WL 7013574 (E.D. Mich. Dec. 11, 2014), which the bail magistrates cite for other reasons, did hold that a courtroom is a nonpublic forum in the context of a recording claim, it made the same mistake that the bail magistrates make here: perfunctorily applying speech cases to the recording context.  *See id.* at *9 & n.10 (relying on *Mezibov* despite acknowledging that "several later circuit decisions have criticized the holding in *Mezibov*").  Moreover, subsequent Sixth Circuit case law casts doubt on *McKay*'s public-forum analysis.  *See Enoch*, 728 F. App'x at 456 (holding that journalists who had alleged that they were barred from recording a press conference in a courthouse corridor had stated a valid First Amendment claim because "the First Amendment protects the rights of both the media and the general public to attend and share information about the conduct of trials").

*Broadcasting System*, 497 F.2d 102, 107 (5th Cir. 1974); *Goldschmidt v. Coco*, 413 F. Supp. 2d 949, 952 (N.D. Ill. 2006). Put differently, the government's ability to prevent the public from observing and documenting court proceedings is already subject to various constraints under existing First Amendment doctrine. The bail magistrates ignore all of that existing doctrine in trying to shunt this case into the public-forum framework.

Of course, while the bail magistrates' reliance on the public-forum doctrine is misplaced here, that does not mean that courts cannot consider the location of government activity in determining whether the public has a constitutional right to record that activity. After all, the location of the activity—even if it occurs in public view—may be relevant in assessing the validity of the government's rationale for restricting recording of that activity. And, for that reason, the location of the activity may warrant consideration under *Fields*'s "time, place, and manner" inquiry. But *Fields* makes clear that the analysis should focus on the government's specific *justification* for restricting recording in that location, rather than on the location's abstract physical characteristics or historical uses. By urging the Court to apply the public-forum doctrine in this case, the bail magistrates attempt to shift the Court's focus away from the relevant inquiry.

## II.    Even if the public-forum doctrine applied here, the recording ban would still violate the First Amendment.

The bail magistrates' public-forum argument fails for an additional reason: namely, that the ban on audio-recording bail hearings would not survive First Amendment scrutiny even under a public-forum analysis. In other words, even if the courtroom were properly treated as a

nonpublic forum here, the recording ban would still be unconstitutional because Defendants have not produced any evidence to show that the ban is reasonable.[6]

As the Third Circuit has recognized, the government's authority to restrict First Amendment activity in a nonpublic forum is not unfettered and must, instead, be "reasonable in light of the purpose of the for[um]." *Child Evangelism Fellowship of New Jersey Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 526 (3d Cir. 2004). This reasonableness test is "more exacting than the deferential rational basis standard." *Northeast Pa. Freethought Soc'y v. County of Lackawanna Transit Sys.*, 938 F.3d 424, 438 (3d Cir. 2019). Under this test, the government bears the burden of establishing that a given regulation is a reasonable means of advancing a purpose of the forum. *See Pomicter v. Luzerne Cty. Convention Ctr. Auth.*, 939 F.3d 534, 541, 542 (3d Cir. 2019). Thus, if the evidentiary record contradicts the government's rationale for suppressing expressive activity, the regulation violates the First Amendment. *Id.* For these reasons, the Third Circuit has described reasonableness review as a "fact-intensive" inquiry. *Id.* (quoting *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 20 (1st Cir. 2002)).

In this case, Defendants have not met their burden of establishing that the recording ban is a reasonable means of advancing a purpose of the forum, *i.e.*, the bail hearing courtroom. The Sheriff, for his part, does not even attempt to provide a rationale for the recording ban, stating instead that "the lack of justification for such a ban [on recording] does not trigger the First Amendment." ECF. NO. 16, at 12. And while the bail magistrates have offered two justifications for the recording ban, neither is reasonable in light of the evidentiary record.

---

[6] Notably, after asserting that the courtroom is a nonpublic forum, the magistrates never actually applied—or even articulated—the legal standard governing restrictions on expressive activity in nonpublic forums.

The bail magistrates' primary justification for the ban is that the ban is necessary to protect arrestees' privacy and fair-trial rights by limiting the means by which information about the hearings can be disseminated publicly. *See* ECF No. 12 (Bail Magistrates' MTD), at 13. The magistrates also suggest—in a single, speculative sentence—that the ban is needed to ensure that arrestees speak frankly, without censoring themselves during the hearings. *See id.* at 14 (asserting that arrestees might withhold information about "mental health, drug-related issues, and other relevant bail factors" if they believed that their statements could be recorded). As explained below, the ban on recording does not advance any purpose of the bail hearing courtroom, and neither of the bail magistrates' purported justifications can save the recording ban.

**A.      Banning audio recording does not advance any purpose of the forum.**

As an initial matter, the record contains no evidence to support—and, in fact, contradicts—the bail magistrates' claim that prohibiting recording (and thus limiting the distribution of information to the public) advances any purpose of the forum. *See, e.g.*, *NAACP v. City of Philadelphia*, 834 F.3d 435, 446 (3d Cir. 2016) (finding regulation of airport advertisements unconstitutional where the government failed to "show[ ] a connection between the restriction and the purpose" of the forum); *Miller v. City of Cincinnati*, 622 F.3d 524, 536 (6th Cir. 2010) (finding restriction on access to city hall unconstitutional because it was not "reasonably related to the purpose of the forum").

In this case, the forum is a public courtroom, whose purpose is to hold bail proceedings that the public has a constitutional right to observe. Consistent with that purpose, the courtroom has an expansive viewing area for members of the public, with ten rows of seats and enough room for up to sixty-five people. ECF No. 31 (Stipulation of Facts), at ¶ 28. It is "equipped with

a speaker system that transmits the [bail] hearing participants' voices into the viewing area" to ensure that the arguments and magistrates' decisions are audible to members of the public, and a monitor to ensure that the arrestee is visible to anyone in attendance. *Id.* ¶ 29. Additionally, the courtroom remains open to the public at all times, as bail hearings are held twenty-four hours a day, seven days a week. *See id.* ¶¶ 7, 27. All of these characteristics demonstrate that the ban's purported aim of restricting the public's ability to gather and disseminate information about the hearings is incongruous with the forum's physical design.

The Third Circuit's decision in *NAACP v. Philadelphia*, 834 F.3d 435 (3d Cir. 2016), illustrates the importance of this disconnect between the government's purported rationale for the restriction and the forum's actual design and usage. In *NAACP*, the City of Philadelphia sought to ban non-commercial advertising in an airport on the ground that the City had "dedicated the advertising space to keeping travelers from seeing potentially offensive noncommercial content." *Id.* at 446. But the court refused to credit the City's rationale for the restriction because the rationale was refuted by the evidentiary record. In particular, the court noted that the City permitted the display of non-commercial content in other parts of the airport, including on television screens and magazine stands. *Id.* Thus, because "the Airport expose[d] [travelers] to an onslaught of noncommercial content outside of its advertising space," the court held that the regulation could not be justified as a means of maintaining a "soothing and pleasing" environment. *Id.* at 447. The same is true here: just as the record in *NAACP* undermined the claim that minimizing controversial content advanced any purpose of the airport, the record here contradicts the magistrates' purported rationale for the recording ban. And the magistrates have not pointed to any other evidence to suggest that limiting public access to information is, in fact, a purpose of the bail hearings.

**B.    The record shows that the recording ban is an unreasonable means of safeguarding fair trial and privacy rights.**

Even assuming that the bail magistrates have accurately identified the purpose of the forum, the record still belies their claim that prohibiting audio-recording is a reasonable means of protecting arrestees' privacy and fair trial rights.  The magistrates contend that audio-recording—unlike note-taking, which is permitted—poses a unique threat to these rights.  But nothing in the record actually supports that claim.  Indeed, the magistrates have not identified a single arrestee who has been deprived of a fair trial or otherwise harmed by the disclosure of information during a bail hearing (let alone an injury that stemmed specifically from an audio recording).  That omission is especially glaring in light of the fact that numerous jurisdictions, including the courts in this District, make audio recordings of every proceeding available to the public.  The magistrates' position thus boils down to an unsubstantiated prediction.  And that prediction is insufficient to meet their burden.  *See Pomicter*, 939 F.3d at 545.

When regulating speech in a nonpublic forum, the government is generally afforded some leeway to "avoid . . . risks" based on predictive judgments, rather than being forced to "react after they occur."  939 F.3d at 545.  But that flexibility does not apply where the government's interest is grounded solely in a "fear of public controversy."  *Lackawanna Transit Sys.*, 938 F.3d at 439.  In such cases, the government "must make a *showing* of threatened disruption."  *Id.* (emphasis added).  And a fear of public controversy is precisely what drives the magistrates' rationale here.  The magistrates' stated concern revolves entirely around the potential *impact* of disseminating certain information—specifically, the risk that such information might prove so newsworthy as to undermine an arrestee's privacy or fair-trial rights.  Accordingly, the magistrates cannot rely on unsupported predictions alone.  *See id.* (striking down ban on non-

commercial advertising on public transport where the government "failed to cite a single [allegedly disruptive] debate caused by an ad on one of its buses").

The requirement of actual proof makes particularly good sense here. The magistrates' argument, after all, is not that the information disclosed during bail hearings is so sensitive that it must be shielded from the public entirely. Rather, their argument is that members of the public (including the Bail Fund) should be deprived of an effective medium—audio recording—for memorializing and disseminating information. The very notion that a regulation is constitutional because it *hinders* the ability of the public to share information already within its possession is antithetical to longstanding First Amendment values. *See, e.g.*, *Linmark Assocs., Inc. v. Willingboro Twp.*, 431 U.S. 85, 96 (1977) (striking down ordinance that prohibited posting "For Sale" signs on lawns because its purpose was to "prevent . . . residents from obtaining certain information"); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) ("[T]he First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection."). In light of the already-suspect nature of their justification for the ban, this Court should be especially wary of allowing the magistrates to justify the ban with unsupported inferences alone. *Cf. Pomicter*, 939 F.3d at 548 ("While it may sometimes be a valid governmental objective, we caution[ ] against 'readily drawing inferences, in the absence of evidence, that controversy avoidance renders [a] ban constitutional.' " (citation omitted)).

The dearth of evidence to support the magistrates' claims here is especially conspicuous given the number of bail hearings that occur in Philadelphia every day. The bail-hearing courtroom plays host to roughly 30,000 preliminary arraignments every year. ECF No. 31, at ¶ 32. And, for the past several months, the magistrates have kept internal recordings of those

hearings. *Id.* ¶ 26. Thus, if arrestees were regularly disclosing information during bail hearings that could later prejudice them at trial—as the bail magistrates suggest—then the bail magistrates would presumably be well positioned to provide proof of that pattern. Yet, they have not identified a single example of an arrestee disclosing such information, let alone shown that the recording ban (which does not prohibit written reporting) would actually protect such an arrestee against prejudice.

C. **The bail magistrates' conjectural and counterfactual claims about how arrestees would behave in the absence of the recording ban does not render the ban reasonable.**

The magistrates' alternative justification for the ban—that arrestees would withhold information during bail hearings if audio-recording were permitted—fares no better than its primary justification. Even giving the magistrates the benefit of "*commonsense* inferences," "there is little logic to the inference" that the magistrates ask this Court to draw: that the public's ability to create a comprehensive record of the proceedings—which audio recordings would provide—would yield an incomplete record for the presiding magistrate to consider. *NAACP*, 834 F.3d at 446, 447 (emphasis added); *see also id.* at 446 ("The ability to use common sense is not a license to close our eyes and suspend disbelief."). The magistrates' use of off-the-record proceedings for a critical stage of criminal proceedings is an aberration. The far more common practice in courts across the country, including in the First Judicial District itself at later stages of criminal cases, *see* Pa. R. Crim. P. 115(a), is to hold on-the-record proceedings, whether through a full written transcript, an audio recording, or both. It defies commonsense to suggest that courts routinely engage in a practice that induces parties to withhold relevant information during criminal proceedings. Not surprisingly, nothing in the record substantiates this claim.

The magistrates' theory is particularly implausible in the bail-hearing context. At issue in these hearings is an individual's liberty from incarceration. *See* ECF No. 31, at ¶ 19. The notion that an arrestee would withhold relevant information and choose to remain in jail for fear of further public disclosure is difficult to swallow. And it is especially difficult here, given that the bail-hearing room is already open to the public and observers are free to take hand-written notes.

Further undercutting the inference that the magistrates ask the Court to draw is the fact that subsequent bail proceedings *are* on the record. *See* Pa. R. Crim. P. 115(a) (providing that all proceedings after an arrestee is "held for court"—i.e., after a preliminary arraignment where bail is set—are on the record); *see also* ECF No. 12 at 3. An arrestee who seeks additional review of his bail can file a motion to reduce bail, challenge bail at a subsequent court date, or participate in what is known as Early Bail Review. ECF No. 31, at. ¶ 23. Each of these proceedings provides *de novo* review. *Id.* ¶ 24. Thus, the magistrates' proposed inference, if accepted, would mean that all of these *de novo* review mechanisms are ineffectual because arrestees withhold relevant information due to the threat of public disclosure emanating from the ability to create an accurate record.

Finally, even if the rare arrestee would withhold information—contrary to the record and commonsense—the recording ban still sweeps far too broadly to be reasonable. *Pomicter* illustrates why. In that case, the Third Circuit considered a prohibition on voice amplification outside a convention center (a nonpublic forum), which the government sought to justify on the ground that, among other things, it would interfere with announcements made inside the convention center. 939 F.3d at 547. But the record contained no information about how often announcements were made inside the convention center or how loud they were; as a result, the court had no way to "understand how voice amplification might disrupt Arena announcements."

*Id.* Given the absence of evidence on the frequency of the claimed risk, the court found that a "blanket ban" on voice amplification was not reasonable under the First Amendment. *Id.*

Analogous reasoning applies here. Even assuming that arrestees would withhold particularly sensitive information—again, an irrational assumption—the magistrates have offered no evidence about how often this would affect cases. Nor could they. Prior to the bail hearing, the First Judicial District's Pretrial Services Division collects information on an arrestee's "residence, employment, health, education level, and other biographical details," which it compiles into a nonpublic report submitted to the magistrates. ECF No. 31, at ¶ 10. Thus, even if it were plausible that arrestees would withhold sensitive information during bail hearings, that information would still be available to the magistrate when making the bail decision. Under *Pomicter*'s logic, a blanket ban is unreasonable when there is no proof that the perceived problem occurs with any regularity and may be entirely illusory—as it almost certainly is in this case.

* * *

The recording ban at issue in this case, by the bail magistrates' own admission, is designed to hinder the public's ability to share information disclosed in open court. Neither the evidentiary record nor commonsense inferences suggest that this (constitutionally suspect) rationale reasonably advances the purposes of the bail hearings. Accordingly, this Court should declare the ban unconstitutional.

## CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiffs' opposition to Defendants' motions to dismiss, this Court should grant the Bail Fund's motion for summary judgment.

Dated:  December 20, 2019

Respectfully submitted,

 /s/   Nicolas Y. Riley
NICOLAS Y. RILEY *
ROBERT D. FRIEDMAN *
INSTITUTE FOR CONSTITUTIONAL ADVOCACY &
    PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue NW
Washington, DC 20001
Tel.:  202-662-4048
Fax:  202-662-9248
nr537@georgetown.edu
rdf34@georgetown.edu
* Admitted to practice *pro hac vice*.

*Counsel for Plaintiffs*

MICHAEL BERRY
PAUL J. SAFIER
SHAWN F. SUMMERS
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel.:  215-665-8500
Fax:  215-864-8999
berrym@ballardspahr.com
safierp@ballardspahr.com
summerss@ballardspahr.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

**PHILADELPHIA BAIL FUND,**

       *Plaintiff,*

**v.**

**ARRAIGNMENT COURT MAGISTRATE**        Civil Action No. 2:19-3110
**JUDGES FRANCIS BERNARD, SHEILA**
**BEDFORD, KEVIN DEVLIN, JAMES**
**O'BRIEN, JANE RICE, and ROBERT**
**STACK, in their official capacities;**
**PRESIDENT JUDGE PATRICK DUGAN,**
**in his official capacity; SHERIFF**
**JEWELL WILLIAMS, in his official**
**capacity,**

       *Defendants.*

_____

## PROPOSED ORDER

Upon consideration of the Motion for Summary Judgment filed by Plaintiff Philadelphia

Bail Fund, it is this _____ day of _____ 2019, hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment be **GRANTED**.

BY THE COURT:

_____
Hon. Harvey Bartle, III, U.S.D.J.

**CERTIFICATE OF SERVICE**

I certify that on December 20, 2019, I caused the foregoing brief in support of Plaintiff's motion for summary judgment, and all supporting documents, to be served electronically on counsel for all Defendants, who are registered ECF users. All of the foregoing documents will also be available for viewing and downloading via the ECF system.

 _/s/   Nicolas Y. Riley_____
NICOLAS Y. RILEY
*Counsel for Plaintiffs*