IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA BAIL FUND | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ARRAIGNMENT COURT MAGISTRATE | : | |
| JUDGES, et al. | : | NO. 19-3110 |

MEMORANDUM

Bartle, J.                                                February 25, 2020

　　　　This case involves the First Amendment right of public access to bail hearings in the Philadelphia Municipal Court.

　　　　Plaintiff Philadelphia Bail Fund, a non-profit organization advocating for reform of Philadelphia's bail system, brings this action under 42 U.S.C. § 1983 against Philadelphia Municipal Court Arraignment Court Magistrates Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Cateria McCabe, and Robert Stack as well as against Philadelphia Municipal Court President Judge Patrick Dugan and the Sheriff of Philadelphia County, Rochelle Bilal.[1]  All are being sued in their official capacities.  Plaintiff seeks a declaratory judgment that two Pennsylvania court rules and a Philadelphia Municipal Court Arraignment Court Magistrate rule, insofar as

_____

1.   Originally Merry Reed, a writer and reporter, was named as a plaintiff.  She has been dismissed from the action by agreement of the parties.  By stipulation, the parties have also substituted a new Arraignment Court Magistrate and the newly-elected Sheriff of Philadelphia County as defendants.

they prohibit plaintiff from making audio recordings of bail hearings, violate its right of access to court proceedings under the First Amendment to the United States Constitution.  The complaint also requests attorney's fees and costs against the Sheriff and "such further relief as may be just, lawful and equitable."[2]  The plaintiff does not seek damages from any of the defendants.

Before the court are cross motions of the parties for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

Under Rule 56(a), summary judgment may be granted "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Here, the parties have stipulated to all the relevant facts.  We must simply decide whether any of the parties is entitled to judgment as a matter of law.

II

The following are the relevant facts to which the parties have stipulated.

---

2.   The Sheriff also filed a cross-claim against the judicial defendants for indemnity for any assessed attorney's fees and costs.

The six defendant Arraignment Court Magistrates[3] are appointed by the Philadelphia Municipal Court for four-year terms to conduct bail hearings at preliminary arraignments, among other duties. 42 Pa.C.S. § 1123(a)(5). They do not have to be lawyers. See 42 Pa.C.S. § 3112. They sit on a rotating basis in a courtroom in the basement of the Criminal Justice Center in downtown Philadelphia and conduct each bail hearing over a video link to each of the seven Philadelphia Divisional Booking Centers where arrestees are processed. A magistrate is available twenty-four hours a day, seven days a week, and 365 days a year. On average there are 30,000 bail hearings a year or roughly 90 hearings per day in Philadelphia.

When an individual is arrested, he or she is taken to one of the seven Divisional Booking Centers to be processed. A police report is generated and is electronically transmitted to the Philadelphia District Attorney's Office for charging. The report is also transmitted to the Pretrial Services Division of the First Judicial District, which encompasses Philadelphia County, to aid it in conducting an interview of the arrestee. The Pretrial Services Division asks the arrestee about his or her residence, employment, health, education, financial situation, and other biographical details which it compiles into

---

3.   The magistrates are sometimes referred to as Bail Commissioners. 42 Pa.C.S. § 3111.

a report.  It then submits the report to the magistrate through
the Preliminary Arraignment Reporting System ("PARS").  After
receipt of this report and approval of the charges against the
arrestee by the District Attorney's Office, the magistrate holds
a preliminary arraignment where bail is determined.  The
Pretrial Services Division report is available to the court, the
District Attorney's office, and the arrestee's representative
but not to the public.

        The preliminary arraignment takes place on average
fifteen hours after the arrest.  The name of the arrestee and
the case and its number is first made public at that time.  The
prosecution, the defense counsel, and the arrestee all have an
opportunity to address and argue before the magistrate
concerning bail and answer any questions the magistrate may
pose.  Typically, neither the assistant district attorney nor
the attorney for the arrestee submits any written argument.  At
the conclusion of the hearing, the magistrate decides whether
pretrial release is appropriate and if so the amount and
conditions of bail.  Rules 523 and 524 of the Pennsylvania Rules
of Criminal Procedure respectively set forth the criteria for
release on bail and the types of release.  Each bail hearing
typically lasts less than four minutes on average.  If either
party objects to the magistrate's decision, a Municipal Court
judge is immediately available by telephone for a de novo

appeal.  The audio-visual connection with the arrestee, however, is terminated before any appeal.[4]

All preliminary arraignments are open to the public and press.  The courtroom has capacity for an audience of 65 and contains a glass wall which separates the spectators from the front of the courtroom.  The proceedings are amplified by a speaker system, and the audience can observe the visual link showing the arrestee.  While the public and press may observe and take notes, the court rules in issue prohibit them from making video or audio recordings.  The Sheriff's Office maintains order in the courtroom and enforces the court rules at the direction of the presiding magistrate.

There is no transcript of the preliminary arraignment or of any immediate telephonic appeal to a Municipal Court judge, and no court reporter is present for either.  Although the court makes audio recordings of these preliminary arraignments, it does so to address technical issues such as the quality of the sound and to enable the President Judge of the Municipal Court to monitor the performance of the magistrates. The recordings are not filed of record and are not used in

---

4.   An arrestee may also obtain a further hearing in the Municipal Court by filing a motion to challenge a bail determination or to have the bail amount reduced or to ask to participate in what is known as "Early Bail Review."  This further hearing will take place within five days of the initial bail hearing at the earliest.

making a bail determination in any case or in any subsequent hearing or for any appeal.  The recordings are not available to the parties or the public and are of inferior quality and often hard to hear.[5]  Such recordings are not made under the First Judicial District Digital Recording Program from which official court transcripts of other proceedings are prepared.

Counsel for the judicial defendants advised the court at oral argument and plaintiff's counsel does not dispute that the public may obtain for a fee written transcripts of all judicial proceedings that are the subject of the First Judicial District Digital Recording Program.  Copies of the underlying recordings themselves, however, are not publicly available.

Following the preliminary arraignment, various court documents related to it are filed of record.  These documents include the criminal complaint and a form which contains the magistrate's decision concerning bail.  Copies are available at twenty-five cents per page, but there is no charge simply to view the documents.  Docket sheets are also publicly accessible. In addition, the Administrative Office of Pennsylvania Courts makes available a bulk data report of case information for every preliminary arraignment in the Municipal Court.  The public may

---

5.  Counsel for the judicial defendants, in response to a question from the court, stated the facts in the second half of this sentence.  All counsel agreed to have the court accept these facts as part of the record.

obtain electronic case data for a fee from the First Judicial District.

On June 14, 2019, the Bail Fund emailed Philadelphia Municipal Court President Judge Dugan requesting permission to audio-record bail hearings.  Judge Dugan replied that state rules prohibited the granting of the request.  Shortly after, the Philadelphia Bail Fund instituted this action.

III

The court rules at issue in this case generally operate to prohibit audio and video recordings of criminal proceedings by members of the public.

Rule 112 of the Pennsylvania Rules of Criminal Procedure provides[6]:

> (C)  Except as provided in paragraph (D), the stenographic, mechanical, electronic recording, or the recording using any advanced communication technology, of any judicial proceedings by anyone other than the official court stenographer in a court case, for any purpose, is prohibited.

> (D)  In a judicial proceeding before an issuing authority, the issuing authority, the attorney for the Commonwealth, the affiant, or the defendant may cause a recording to be made of the judicial proceeding as an aid to the preparation of the written record for subsequent use in a

---

6.   The Pennsylvania Rules of Criminal Procedure are adopted by the Supreme Court of Pennsylvania under the authority of the Constitution of the Commonwealth of Pennsylvania.  <u>See</u> Pa. Const. art. V, § 10(c); Pa.R.Crim.P. 102.

case, but such recordings shall not be
publicly played or disseminated in any
manner unless in a court during a trial or
hearing.

Rule 1910 of the Pennsylvania Rules of Judicial

Administration provides in relevant part:  "judges shall

prohibit broadcasting, televising, recording or taking

photographs in the courtroom and areas immediately adjacent

thereto during sessions of court or recesses between sessions,"

subject to limited exceptions not relevant here." Pa.R.J.A.

No. 1910(B).[7]

The Philadelphia Municipal Court Arraignment Court

Magistrate rule 7.09 reads in relevant part:  "[a]n Arraignment

Court Magistrate shall prohibit broadcasting, televising,

recording, or taking photographs in the Courtroom or the areas

immediately adjacent thereto during sessions or recesses between

sessions. . . ."  Phila. M.C.R. Crim., A.C.M., Sec. 7.09.

IV

The plaintiff has brought this action under 42 U.S.C.

§ 1983 which provides:

Every person who, under color of any
statute, ordinance, regulation, custom, or
usage, of any State . . . subjects, or

---

7.    The Pennsylvania Supreme Court recently ordered Rule
1910(B) amended to read "judges shall prohibit" rather than
"judges should prohibit" the recording of judicial proceedings.
See In re Amendment of Rule 1910 of Judicial Admin., No. 522
(Pa. Oct. 8, 2019).  The amendment took effect on January 1,
2020.  Id.

causes to be subjected any citizen of the
United States or other person within the
jurisdiction thereof to the deprivation of
any rights, privileges, or immunities
secured by the Constitution and laws, shall
be liable to the party injured in an action
at law, suit in equity, or other proper
proceeding for redress, except that in any
action brought against a judicial officer
for an act or omission taken in such
officer's judicial capacity, injunctive
relief shall not be granted unless a
declaratory decree was violated or
declaratory relief was unavailable. . . .

The question before the court is whether the plaintiff
is entitled under the First Amendment to audio-record bail
hearings in the Philadelphia Municipal Court where the court
itself only makes inferior recordings for internal purposes and
does not make official recordings or transcripts of those
proceedings.  Under Rule 115 of the Pennsylvania Rules of
Criminal Procedure, recordings of proceedings in open court are
not mandated until "after a defendant has been held for court,"
that is, until after a preliminary arraignment in the Municipal
Court.  Pa.R.Crim.P. 115(A); see also Pa.R.Crim.P. 1012(A).

The First Amendment reads in relevant part:  "Congress
shall make no law . . . abridging the freedom of speech, or of
the press . . ."  This guarantee has been incorporated into the
due process clause of the Fourteenth Amendment and applies to
the states.  Nat'l Inst. of Family and Life Advocates v.
Becerra, 138 S. Ct. 2361, 2371 (2018).  It is now well-settled

that the First Amendment guarantees the right of public access to criminal trials, including the right to listen and take notes and to disseminate and publish what is observed.  Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575-80 (1980). Underlying this right of access is "the common understanding that a major purpose of the [First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one."  Globe Newspapers Co. v. Superior Court for Norfolk Cnty., 457 U.S. 596, 604-05 (1982).  Public scrutiny also "fosters an appearance of fairness" and "permits the public to participate in and serve as a check upon the judicial process."  Id. at 606.

The right of public access, like many aspects of the First Amendment, is not absolute.  Id. at 606.  However, any denial of access must be narrowly tailored and be necessitated by a compelling governmental interest.  Id. at 607.  It must also be determined on a case-by-case basis.  Id. at 608.  As the Supreme Court later stated in Press-Enterprise Co. v. Superior Court of Cal., 478 U.S. 1, 9-10 (1986):

> The presumption may be overcome only by an
> overriding interest based on findings that
> closure is essential to preserve higher
> values and is narrowly tailored to serve
> that interest.  The interest is to be
> articulated along with findings specific
> enough that a reviewing court can determine

> whether the closure order was properly
> entered.

In stressing the importance of public access, the Supreme Court had declared that the blanket closure of courtrooms even for the testimony of minor victims of sexual offenses violates the First Amendment.  Globe Newspapers Co., 457 U.S. at 602-11.

In United States v. Simone, 14 F.3d 833, 839 (3d Cir. 1994), our Court of Appeals delineated six societal interests in support of open courtrooms:

> [P]romotion of informed discussion of
> governmental affairs by providing the public
> with the more complete understanding of the
> judicial system; promotion of the public
> perception of fairness which can be achieved
> only by permitting full public view of the
> proceedings; providing a significant
> community therapeutic value as an outlet for
> community concern, hostility and emotion;
> serving as a check on corrupt practices by
> exposing the judicial process to public
> scrutiny; enhancement of the performance of
> all involved; and discouragement of perjury.

The Supreme Court has extended that First Amendment right of public access beyond the criminal trial itself.  It has held that the First Amendment also applies to jury selection and to preliminary hearings.  Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 513 (1984); Press-Enterprise Co., 478 U.S. at 13.  Our Court of Appeals has also concluded that post-trial hearings to investigate jury misconduct must also be

open to the public under the First Amendment.  _Simone_, 14 F.3d
at 840.

> While the parties have not cited any case specifically
dealing with bail hearings, we have no hesitancy in determining
that the right of public access encompasses this significant
aspect of the judicial process.  The Eighth Amendment to the
Constitution specifically guarantees that "Excessive bail shall
not be required."  See _Timbs v. Indiana_, 139 S. Ct. 682, 688
(2019). Regardless of what the historical practice of openness
may have been, the societal interests outlined by the Supreme
Court and later by our Court of Appeals in _Simone_ all lead to
the inexorable conclusion that the First Amendment protects the
right to attend and report on bail proceedings.

> In addition to the constitutional right to attend
criminal judicial proceedings, the courts have dealt with public
access to judicial records.  There is a common law right of the
public "to inspect and copy . . . judicial records and
documents" in criminal as well as civil cases.  _In re Avandia
Mktg., Sales Practices and Prods. Liab. Litig._, 924 F.3d 662,
672 (3d Cir. 2019).  This right long antedates the Constitution
and, at least in the criminal context, has now taken on
constitutional dimensions.  In _Press-Enterprise Co._, for
example, the Supreme Court elevated to First Amendment status

the right of the public to have access to a copy of the
transcript of a preliminary hearing.  478 U.S. at 13.

In United States v. Antar, 38 F.3d 1348 (3d Cir.
1994), our Court of Appeals concluded that the district court
erred in initially sealing the transcript of jury voir dire and
putting restrictions on its use when later unsealed, including
limiting use of juror information.  The Court of Appeals made
clear that access to the transcripts of a judicial proceeding is
as critical under the First Amendment as is the right to be
present to hear and observe what occurs in the courtroom.  The
Court emphasized:

> True public access to a proceeding means
> access to knowledge of what occurred there.
> It is served not only by witnessing a
> proceeding firsthand, but also by learning
> about it through a secondary source. . . .
> Access to the documentation of an open
> proceeding, then, facilitates the openness
> of the proceeding itself by assuring the
> broadest dissemination.  It would be an odd
> result indeed were we to declare that our
> courtrooms must be open, but that
> transcripts of the proceedings occurring
> there may be closed, for what exists of the
> right of access if it extends only to those
> who can squeeze through the door?

Id. at 1360.

The Court grounded its analysis on the First
Amendment:  "This strong presumption of access to records,
including transcripts, provides independent support for the

-13-

conclusion that the First Amendment right of access must extend equally to transcripts as to live proceedings." Id. at 1361.

The right to attend and report on trials and to have access to judicial records, albeit not absolute, has now been firmly established as a First Amendment right. The Supreme Court has also held in Chandler v. Florida, 449 U.S. 560, 583 (1981), that the Constitution does not prohibit radio, television or photographic coverage of a criminal trial. While the press is not constitutionally prohibited from recording and broadcasting a criminal trial, it is also not constitutionally entitled to do so. The Court wrote in Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 610 (1978) that the press has "no constitutional right to have such testimony [of live witnesses] recorded and broadcast." Likewise, a number of appellate decisions in other circuits have denied any First Amendment right to audio-record, videotape or televise court proceedings. See, e.g., Conway v. United States, 852 F.2d 187, 188 (6th Cir. 1988); United States v. Yonkers Bd. of Educ., 747 F.2d 111, 113-14 (2d Cir. 1984); United States v. Hastings, 695 F.2d 1278, 1284 (11th Cir. 1983).

The plaintiffs rely on a more recent decision, Whiteland Woods, LP v. Twp. of West Whiteland, 193 F.3d 177 (3d Cir. 1999), a case which did not involve public access to criminal proceedings. There the plaintiff claimed a

-14-

First Amendment right to videotape a meeting of a Township

Planning Commission.  The Court of Appeals framed the issue

before it as follows:

> The primary issue on appeal is whether there
> is a federal constitutional right to
> videotape public meetings of a township
> planning commission when other effective
> means of recording the proceedings are
> available.

Id. at 180.

The Court held that under the circumstances no

First Amendment right to videotape existed.  Id. at 185.  It

noted that interested parties and the public were allowed to

take notes, use audio recording devices, and even engage

stenographers.  The Court observed:

> Nothing in the record suggests videotaping
> would have provided a uniquely valuable
> source of information about Planning
> Commission meetings.  The First Amendment
> does not require states to accommodate every
> potential method of recording its
> proceedings, particularly where the public
> is granted alternative means of compiling a
> comprehensive record.

Id. at 183.

In affirming the district court's order granting

summary judgment in favor of the Township, the Court concluded,

". . . plaintiff has failed to demonstrate an essential nexus

between the right of access and a right to videotape the

Planning Commission proceedings.  Id. at 183-84.

-15-

The most recent pronouncement of our Court of Appeals on the First Amendment right to record a public event is in Fields v. City of Phila., 862 F.3d 353 (3d Cir. 2017). This case like Whiteland Woods did not involve access to a court proceeding. See id. at 355. There plaintiffs brought an action against the City of Philadelphia and certain police officers for retaliation for photographing and recording police activity in arresting protestors in public places. Id. The Court held that plaintiffs had a First Amendment right to do so. Id. at 360. It observed, "To record what there is the right for the eye to see or the ear to hear corroborates or lays aside subjective impression for objective facts." Id. at 359. The Court continued, "We do not say that all recording is protected or desirable. It is subject to reasonable time, place, and manner restrictions. . . . But in public places these restrictions are restrained." Id. at 360.

The cases that have considered the issue have all held that the First Amendment does not guarantee the public the right to record judicial proceedings. These holdings, in our view, do not end the analysis because the facts here are significantly different. In none of those cases does it appear that the court of first instance had a policy or custom not to make official recordings or transcripts of those proceedings. Indeed, in several of those cases, the decision specifically referenced the

-16-

fact that either a transcript was available or the court had an official recording system.

In Nixon, the press sought copies of the actual Nixon tapes featured in a criminal trial of the ex-President's former advisors with the intent of broadcasting them.  435 U.S. at 591-92.  While denying the request because of the special provisions of the Presidential Recordings Act and stating that the press had no constitutional right to record and broadcast anything, the Court emphasized that the press already had copies of the trial transcripts which included the tapes that were being sought.  Id. at 610.

In Yonkers Bd. of Educ., the Court of Appeals for the Second Circuit upheld a federal district court rule banning the public use of recording devices in the courtroom.  747 F.2d at 113-14.  Yet, in doing so, it touched upon the existence of an official reporting system as one of the reasons not to allow the public to make recordings.  Id. at 114.  The Second Circuit opined that "indiscriminate recording of trial proceedings might undermine the official court reporter system."  Id.  Of course, in this pending case there are no transcripts and no official court reporter system to undermine.

The precedents in this circuit have emphasized how important the objective record of an event can be beyond what one may see or hear whether in a court proceeding or elsewhere.

-17-

As our Court of Appeals stated in Antar, "Access to the
documentation of an open proceeding . . . facilitates the
openness of the proceeding itself by assuring the broadest
dissemination.  It would be an odd result indeed were we to
declare that our courtrooms must be opened, but that transcripts
of the proceedings occurring there may be closed. . . ."
38 F.3d at 1360.

        In Whiteland Woods, the Court of Appeals denied the
right to videotape a Township Planning Commission meeting.
193 F.3d at 183-84.  In doing so, it explained that "The First
Amendment does not require states to accommodate every potential
method of recording its proceedings, particularly where the
public is granted alternative means of compiling a comprehensive
record." Id. (emphasis added).  And recently in Fields,
involving the recording of public police activity, the Court
asserted, "To record what there is the right for the eye to see
or the ear to hear corroborates or lays aside subjective
impression for objective facts."  862 F.3d at 359.  These three
cases all emphasized the significance of a recording of events
as well as the significance of court records in any First
Amendment analysis.

        We recognize that First Amendment decisions which
involved other kinds of public spaces are not necessarily
applicable to judicial proceedings.  Courtrooms, whether they

-18-

are deemed public or non-public fora, are different than other places such as street corners, parks, subways, stadiums, theaters, and even the halls of non-judicial governmental bodies.  Courts are fact-finding institutions which after due deliberation adjudicate constitutional and other significant substantive and procedural rights of litigants.  Fairness and impartiality are paramount.  There must be decorum, dignity, order and even solemnity in the judicial process.  The hustle and bustle and cacophony of the street or marketplace have no place in the courtroom.  The behavior and actions of participants and spectators attending a judicial proceeding are properly subject to unique constraints that do not apply elsewhere.

There also can be no denying that bail hearings are a significant part of the criminal process.  Indeed, as already noted, there is a constitutional dimension to them.  The Eighth Amendment provides that "[e]xcessive bail shall not be required. . . ."  Likewise, the Constitution of the Commonwealth declares that "[e]xcessive bail shall not be required. . . ." Pa. Const. art. I, § 13.[8]  What and how the defendant magistrates

---

8.   Article I § 14 of the Pennsylvania Constitution further provides:

>    All prisoners shall be bailable by
>    sufficient sureties, unless for capital
>    offenses or for offenses for which the

rule on bail is no small matter even though a bail hearing usually lasts less than four minutes on average.  Bail of course may be denied to protect the public or the arrestee and to prevent pretrial flight.  At other times, release will be granted and in those cases the magistrate will be required to decide appropriate monetary and non-monetary conditions of release pursuant to the detailed state procedural rules. See Pa.R.Crim.P. 523-28.

The decisions of the magistrates will affect, in many instances, whether the arrestees can continue to work and support their families pending trial.  The time period between the bail hearing and the trial is often many months if not longer.  Improperly setting bail beyond the financial reach of an impecunious individual or otherwise erring in a decision can result in wrongful pretrial detention, with particularly unfortunate consequences if the charges are later dropped or an arrestee is found not guilty.  We, of course, do not intimate that the magistrates here are making improper rulings, either under Pennsylvania law or the United States Constitution.  The salient point is that meaningful public access to bail hearings

---

maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great . . . .

is imperative.  The rulings concerning bail and the process by which they are made, no matter how quickly accomplished, have federal and state constitutional ramifications.  The rulings and the process have serious consequences for the arrestee and implicate vital societal interests.  See Simone, 14 F.3d at 839.

The defendants justify the ban on audio recordings as needed to protect the privacy of the arrestee and his or her right to a fair trial.  The ban, according to the defendants, allows arrestees to speak more frankly at the bail hearing concerning their mental health, drug issues and other personal matters.  We find this argument unconvincing.  The bail hearings are presently open to the press and public, and anyone can observe and take notes about what is occurring.  Thus, anything said at the hearing is subject to wider dissemination and can appear in the newspapers, on television, or on social media even if no audio recordings by the public are allowed.  Further, defendants have not articulated why the privacy of the arrestee at bail hearings is any more compelling than the privacy of an arrestee at later stages of the criminal process when judicial recordings are made and transcripts are produced.

We observe that Rule 112(D) of the Pennsylvania Rules of Criminal Procedure allows an attorney for the Commonwealth, for an affiant, or for the defendant to make recordings to prepare a record although it prohibits any dissemination to the

public of such recordings.  This exception allowing recordings, to say nothing about the existence of the Philadelphia Municipal Court's own inferior recordings for internal purposes, undercuts the defendants' argument about the arrestee's fear of speaking frankly if a recording is being made.

Public access to bail hearings is clearly guaranteed under the First Amendment.  Official audio recordings or transcripts of such hearings are not required under Rule 115 of the Pennsylvania Rules of Criminal Procedure and in fact such recordings are not being made.  If the hearings were officially recorded, the public would have a constitutional right of access to the recordings or to the transcripts absent compelling circumstances not demonstrated here.  In the cases which have denied the public the constitutional right to record judicial proceedings, there has been no hint that there would be no official record for public scrutiny.[9]

Under the narrow circumstances present here, we must balance the ability of the court to constrain the behavior and actions of those in the courtroom against the public right of meaningful access.  In deciding the matter, we must take into

---

9.  We note, for example, that all bail hearings before the Magistrate Judges in the United States District Court for the Eastern District of Pennsylvania are officially recorded and the recordings and transcripts are available for purchase by the public.

account the importance our Court of Appeals has placed on the official or objective record.  There are over 90 bail hearings a day in Philadelphia and each usually lasts less than four minutes on average.  Absent an official record other than a ruling set forth on a form, attendance and notes alone are insufficient to comprehend the full import of these numerous and rapid hearings.  While an arrestee has a right of immediate appeal de novo to a Municipal Court judge, the appeal is conducted by telephone with no video link to the arrestee and no recording of that proceeding.  The public has less access to the de novo appeal than to the hearing before the magistrate.

The scales tip in favor of the public's right to audio-record in a non-disruptive and quiet manner the preliminary arraignment and the determination of bail where the court has a policy or custom not to make official audio recordings or transcripts of its own.  There is here an "essential nexus between the right of access" and the right to audio-record the proceedings.  See Whiteland Woods, 193 F.3d at 183-84.  The right to attend and take notes and then to obtain statistical data about bail hearings after the fact is not adequate under the circumstances presented to vindicate the public's First Amendment right of access to the courts.  To reiterate what our Court of Appeals wrote in Antar:

> It would be an odd result indeed were we to
> declare that our courtrooms must be open,
> but that transcripts of the proceedings
> occurring there may be closed, for what
> exists of the right of access if it extends
> only to those who can squeeze through the
> door.

38 F.3d at 1360.

V

The court will grant the motion of plaintiff for summary judgment on its constitutional claim and will deny the cross-motions of all defendants for summary judgment on that claim.  The court declares that Rule 112(C) of the Pennsylvania Rules of Criminal Procedure, Rule 1910 of the Pennsylvania Rules of Judicial Administration, and the Philadelphia Municipal Court Arraignment Court Magistrate rule 7.09 are unconstitutional under the First Amendment insofar as they prohibit the public to audio-record bail hearings.  Our holding is limited to the present circumstances in which the Philadelphia Municipal Court does not make available to the public either its own official audio recordings or transcripts of the bail hearings of the same type and quality and in the same manner that are made available for other judicial proceedings.

The law in our view is well established as recited above that plaintiff is not entitled under the First Amendment to make its own audio recordings if the public can obtain official audio recordings or transcripts from the Philadelphia

-24-

Municipal Court.  Thus, the validity of the court rules in question may be saved by making such audio recordings or transcripts publicly available.  No state law or rule called to our attention prevents the court from taking this step.

If after 45 days from the date of the order entered in this case the Philadelphia Municipal Court has not made official judicial recordings or transcripts of bail hearings available to the public as set forth above, the plaintiff may then make its own audio recordings of said hearings by use of silent hand-held recorders.  The court will continue to maintain jurisdiction of this action and will require defendants to notify the court whether such recordings or transcripts are now obtainable no later than 45 days after the entry of the order herein.

VI

Finally, the Sheriff of Philadelphia County, who is being sued in her official capacity, makes an additional argument that she cannot be held liable for attorney's fees and costs even if the plaintiff prevails on its constitutional claim under § 1983.  Title 42 U.S.C. § 1988(b) provides in relevant part:

> In any action or proceedings to enforce a
> provision of . . . § 1983 . . . the court,
> in its discretion, may allow the prevailing
> party, other than the United States, a
> reasonable attorney's fee as part of the
> costs, except that in any action brought
> against a judicial officer for an act or

> omission taken in such officer's judicial
> capacity such officer shall not be held
> liable for any costs, including attorney's
> fees, unless such action was clearly in
> excess of such officer's jurisdiction.

Plaintiff does not seek attorney's fees and costs against the Arraignment Court Magistrates or the Philadelphia Municipal Court President Judge.  It has not presented any evidence that these defendant judicial officers have acted "clearly in excess of . . .[their] jurisdiction."

The Sheriff, as noted above, has been sued in her official capacity and is acting as an agent of the judicial officials who have promulgated and have directed her to enforce the state and local court rules against audio recordings by the public in the courtroom.  See Kentucky v. Graham, 473 U.S. 159, 163-66 (1985).  If the judicial defendants cannot be liable for attorney's fees and costs, surely attorney's fees and costs cannot be awarded against the Sheriff, who is merely acting at their behest without discretion to do otherwise.

Accordingly, the Sheriff is entitled to summary judgment in her favor to the extent plaintiff seeks attorney's fees and costs against her in her official capacity.  The Sheriff's cross-claim against the judicial defendants for indemnity for attorney's fees and costs will be denied as moot.